Marlene DUPLER and Eva Dare, for themselves and others similarly situated, of Portland, Maine, Plaintiffs,

v.

The CITY OF PORTLAND and David Bittenbender, in his official capacity as Welfare Director of the City of Portland, Defendants.

Dale A. ROY et al., Plaintiffs,

v.

OVERSEERS OF THE POOR OF the CITY OF PRESQUE ISLE et al., Defendants.

Civ. Nos. 74-134-SD, 74-79-ND.

United States District Court,
D. Maine, N. D. and S. D.

Oct. 26, 1976.

Robert E. Mittel, and Susan Calkins, Portland, Me., for plaintiffs in No. 74–134–SD.

William J. O'Brien, Charles A. Lane, Ellen Egan George, Legal Dept., City of Portland, Portland, Me., for defendants in No. 74–134–SD.

Robert E. Mittel, and Susan Calkins, Portland, Me., Robert Schwartz, Food Research & Action Center, New York City, for plaintiffs in No. 74–79–ND.

Charles A. Lane, Portland, Me., Hugo A. Olore, Jr., and John C. Walker, Presque Isle, Me., for defendants in No. 74–79–ND.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

These are class actions seeking declaratory and injunctive relief against the reduction of general assistance benefits as a consequence of the receipt of federal food stamps, alleged to be in violation of Section 2019(d) of the Federal Food Stamp Act, 7 U.S.C. § 2019(d) (Supp.1976). Plaintiffs in each case are recipients of federal food stamps who allege that their general assistance benefits have been unlawfully reduced on account of their receipt of these stamps. Defendants are the Cities of Portland and Presque Isle and the officials of each who are charged with the administration of the general assistance program. Jurisdiction in each case is asserted, properly, under 28 U.S.C. §§ 1337, 1343(3), 42 id. § 1983; and each case has been certified as a class action under Fed.R.Civ.P. 23(b)(2). The Court has previously entered temporary restraining orders in each case enjoining reduction of plaintiffs' general assistance benefits on account of their receipt of federal food stamps. The cases have been consolidated for hearing and argument. They have been tried to the Court, without jury, and fully briefed and argued by counsel.[1]

### I.

Like every other state, the State of Maine operates federally-assisted relief programs of aid to aged, blind and disabled persons and to dependent children. 22 Me. Rev.Stat.Ann. §§ 3172–3282, 3741–3758 (Supp.1975); *see* 42 U.S.C. §§ 601–644, 1201–1206, 1351–1355, 1381–1383c. *See generally Graves v. Fisher*, 361 F.Supp. 1356 (D.Me.1972) (three-judge court), *aff'd mem.*, 412 U.S. 924, 93 S.Ct. 2748, 37 L.Ed.2d 152 (1973); *Stoddard v. Fisher*, 330 F.Supp. 566 (D.Me.1971) (three-judge court). These programs are administered by the State Department of Human Services. In addition, municipalities in Maine, including the Cities of Portland and Presque Isle, administer general assistance programs of "municipal relief of the poor" under 22 Me.Rev.Stat.Ann. §§ 4450–4508.[2] The cost of providing this relief is met out of municipal funds, subject to partial reimbursement by the State if costs exceed a certain level. *Id.* § 4499, see Appendix. In Portland, this program is administered by the Department of Health and Social Services; in Presque Isle by the Overseers of the Poor. The operation of the program is, in every material respect, the same in each city. It is therefore necessary to describe only the operation of the Portland program.

Guidelines established by the Portland Department of Health and Social Services, pursuant to 22 Me.Rev.Stat. § 4504, see Appendix, describe the program as one of "general assistance . . . to those in need." They state, further:

> Assistance will be given to enable recipients in accordance with the general law and the guidelines set forth herein to maintain a reasonable standard of health

---

1. Plaintiffs have waived any claim for damages against defendants individually and seek only retroactive payment of any general assistance to which they are entitled. Defendants have agreed that plaintiffs will be entitled to retroactive payment of benefits to the extent it is determined that they have been illegally withheld.

2. The relevant portions of the Maine general assistance statutes are set forth in an appendix.

and decency. . . . The client is expected to make use of all available resources before seeking help from the City. Each request for relief shall be considered a new obligation, and nothing herein shall be construed as giving any person, prior to the determination of eligibility a continuing right to assistance.

The Portland general assistance program supplies funds and goods and services in kind to applicants on the basis of a budget prepared by city personnel. Using criteria of need established by the Guidelines, city workers calculate the shortfall between an applicant's income and necessary expenditures. For example, the Guidelines prescribe food expenses of $12 per week for a single person, plus $6 per week for each additional member of an applicant's household.[3] Under this formula plaintiff Marlene Dupler, who had a small child was receiving $18 per week of general assistance, in the form of city food orders, plus other general assistance.

The Guidelines state that general assistance is granted not on a continuing but on a week-by-week basis and that an applicant is required each week to establish her/his

3. With respect to calculation of an applicant's food requirements, the Guidelines state as follows:
   E. INDIGENCY FORMULA
   The Laws of the State of Maine require all municipalities to assist those persons, otherwise eligible, in cases where they are ". . . in distress and standing in need of immediate relief." For purposes of treating all applicants fairly and equally, and discouraging frivolous use of income, assets and other available resources, the following formula will be used by the caseworker in considering the applicant's eligibility for general assistance.
   A = Expenses
   B = Income
   A–B = Need
   * * * * * *
   F. ALLOCATION OF AMOUNTS AVAILABLE FOR RELIEF
   Food allocations shall be made in accordance with the following schedule:

   FOOD STAMPS

   | Number in Household | Food Order (Weekly Basis) |
   |---|---|
   | 1 | $12 |
   | 2 | $18 |

need for relief. The evidence shows, however, that general assistance recipients typically receive aid each week for a considerable period of time and that full procedures relating to proof of need and calculation of an applicant's budgetary needs are not repeated every week.[4]

The events giving rise to these actions occurred in August 1974, when members of the plaintiff classes began to receive federal food stamps under the Federal Food Stamp Act of 1964, 78 Stat. 703, *as amended*, 7 U.S.C. §§ 2011–2025 (Supp.1976) (the Act). The federal food stamp program allows needy persons or families meeting the eligibility standards of the Act to purchase coupons redeemable for food at retail stores. The cost of the coupons is paid by the federal government, and the program is administered by the states. In Maine, the food stamp program is operated by the counties and the costs of administration are borne initially two-thirds by the State and one-third by the municipalities. *See* 22 Me. Rev.Stat.Ann. § 3104 (Supp.1976); 30 Me. Rev.Stat.Ann. § 254. The federal government subsequently reimburses the State for 50 percent of the total administrative costs. 7 U.S.C.A. § 2024 (Supp.1976).

FOOD STAMPS

| Number in Household | Food Order (Weekly Basis) |
|---|---|
| 3 | $24 |
| 4 | $30 |
| 5 | $36 |
| 6 | $42 |
| 7 | $48 |
| 8 | $54 |
| 9 | $60 |

Add $5.00 per week for each additional person over 9 in family.

In Portland, general assistance intended to meet the recipient's food needs is paid not in cash but in "city stamps" redeemable for food at local stores.

4. Thus, Marlene Dupler received general assistance weekly from February to August 1974, from December 1974 to May 1975, and from July to September 1975, but during these periods the City Department of Health and Social Services computed her budgetary needs on only four occasions.

As recipients of general assistance began to receive federal food stamps, the City welfare officials determined that an applicant's receipt of federal stamps would be taken into account in calculating her/his weekly food expenses. This was effected by determining an applicant's budgeted food needs to be the cost to the applicant of federal food stamps rather than the amount set forth in the Guidelines. *See* note 3, *supra.* Thus, in the case of Marlene Dupler, the Portland Department of Health and Social Services allotted her not the $18 previously allowed but only a sum (in her case, $1) with which she could obtain $18 in federal food stamps. The net effect was that Ms. Dupler continued to receive general assistance entitling her to purchase $18 worth of food, but that the City actually paid her only $1.

## II.

■■■ Plaintiffs allege that the reduction of their general assistance benefits by reason of their receipt of federal food stamps violates Section 2019(d) of the Act. The Court is convinced that the language of the statute and the legislative history support plaintiffs' position.[5]

Section 2019(d) of the Act provides:

Participating States or participating political subdivisions thereof shall not decrease welfare grants or other similar aid extended to any person or persons as a consequence of such person's or persons' participation in benefits made available under the provisions of this chapter or the regulations issued pursuant to this chapter.

*See also* 7 CFR § 271.1(c), *infra.* The Congressional purpose for inclusion of this pro-

vision in the Act appears clearly from the declaration of policy, contained in Section 2011, of seeking "to safeguard the health and well-being of the Nation's population and *raise levels of nutrition* among low-income households." 7 U.S.C. § 2011 (emphasis added). Congress' intent in passing the Act was to satisfy the previously unmet nutritional needs of welfare recipients and other low-income persons. *See Rodway v. United States Department of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809, 818–20 (1975). The legislative history of the Act makes clear that the intent of Congress was not to provide a substitute for other forms of aid to low-income persons but to supplement that aid in order to improve their level of nutrition. *See* S.Rep.No.1124, 88th Cong., 2d Sess., 1964 U.S.Cong. & Admin. News 3275–92. It is evident that if welfare assistance is reduced to take into account the value of food stamps received under the Act, the ultimate effect of the Act will be not to raise but merely to maintain pre-existing levels of nutrition and the purpose of the Act will be frustrated.[6] Such, however, is the effect of the actions of the defendants in these cases.

Defendants offer a series of arguments contending that Section 2019(d) does not apply to their action in taking receipt of federal stamps into account when computing an applicant's entitlement to general assistance. None of these arguments is persuasive.

■■■ First, defendants contend that municipal general assistance payments in Maine are not "welfare grants or other similar aid" within the meaning of Section 2019(d). The evidence shows beyond peradventure, however, that general assistance in

---

**5.** The Court does not reach plaintiffs' additional contention, applicable only to the Portland case, that the reductions in general assistance payments were effected without prior notice and opportunity for hearing in violation of the Due Process Clause of the Fourteenth Amendment and 22 Me.Rev.Stat.Ann. § 4506 (Supp. 1974). Plaintiffs have failed to show that the benefits owing to any member of the plaintiff classes were reduced or denied for any reason other than receipt of federal food stamps. The

Court's holding therefore affords plaintiffs complete relief.

**6.** The Supreme Court has recognized that the various welfare programs operated by federal, state and local authorities provide only a minimum-level standard of living. *See generally Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. 309, 318–19, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

fact supplies recipients over extended periods of time with payments in cash and in kind designed to maintain their standard of living at a specified minimum level. General assistance is a state program mandated by state law, 22 Me.Rev.Stat.Ann. § 4497, see Appendix, and partly supported by state funds. *Id.* § 4499, see Appendix. There is no question but that general assistance is an integral part of the system of benefits by which the State of Maine undertakes to meet the needs of its poor. General assistance is therefore clearly a form of "welfare grants or other similar aid" within the meaning of Section 2019(d).

▮ Second, defendants argue that the general assistance program is designed only to satisfy specific categories of needs, including nutritional needs, that are not met by other welfare programs. This purpose, they urge, exactly matches that of the Food Stamp Act. Defendants contend therefore that their interpretation of Section 2019(d) is necessary to avoid duplication of payments designed to meet one and the same need. It is clear, however, that the general assistance program in fact operates to provide regularly recurring grants over the long term and serves as an income-maintenance or welfare grant program. Moreover, it is evident that the general assistance program assures a recipient only minimum standards of nutrition. *See* note 3, *supra.* Plainly, federal food stamps were intended by Congress to be not duplicative of the Cities' programs, but supplementary to them.

▮ Third, defendants advance the argument that plaintiffs' general assistance benefits were not "decreased" within the meaning of Section 2019(d). This contention is based on the provision of the Guidelines, quoted above, requiring that an applicant's eligibility for general assistance and amount of need be determined afresh each week. Defendants argue that since plaintiffs were not receiving continuing relief but a series of independent, discrete grants, it is improper to characterize defendants' actions as effecting a decrease or reduction of plaintiffs' benefits. This argument

founders on the fact that for all practical purposes plaintiffs were receiving continuing benefits under the general assistance program. *See* note 4, *supra.* Equally importantly, the Court can discern in this argument nothing but semantics. Fairly read, Section 2019(d) means that a state or municipality may not give a person receiving federal food stamps less aid than it would grant a person who is otherwise similarly situated but who is not receiving federal food stamps. It would appear to be immaterial for the purposes of Section 2019(d) whether an applicant for municipal relief who is receiving federal food stamps ever received municipal relief before she/he began receiving federal food stamps. In either event, the plain import of Section 2019(d) is to prohibit welfare agencies from taking an applicant's receipt of federal food stamps into account in computing the level of benefits to which the applicant is entitled. There is no question but that, by. so doing, defendants violated Section 2019(d).

▮ Fourth, defendants contend that they are not "participating political subdivisions" of a state within the meaning of Section 2019(d). They point out that, as stated above, the federal food stamp program in Maine is administered not by the municipalities but by the counties. Section 2019(e) of the Act, however, mandates that each participating state shall "conduct the program in every political subdivision in the State." Section 2019(e) further provides that:

> The State agency of each State desiring to participate in the food stamp program shall submit for approval a plan of operation specifying the manner in which such program will be conducted within the State, the political subdivisions within the State in which the State desires to conduct the program, and the effective dates of participation of each such political subdivision.

In Maine, the "State agency of [the] State desiring to participate in the food stamp program" is the Department of Human Services. Pursuant to the mandate of state-wide participation in Section 2019(e),

the Department of Human Services has extended the operation of the program to all municipalities in the State, including the Cities of Portland and Presque Isle. Plainly, even though the municipalities in Maine are not charged with administrative responsibilities for the food stamp program, when the program began to be conducted in a municipality, it became a participating political subdivision. The regulation promulgated by the Secretary of Agriculture pursuant to Section 2013(c) of the Act confirms that Section 2019(d) reaches political units which are not directly involved in the administration of the food stamp program. Regulation 271.1(c), 7 CFR 271.1(c) provides:

> (c) *Prohibition of aid reduction.* States or political subdivisions shall not decrease welfare grants or other similar aid extended to any person or persons as a consequence of such person's or persons' participation in the program.

The omission of the word "participating" both clarifies and implements the Congressional intent.[7]

■■■■ Finally, defendants contend that, if construed to prohibit decreases in general assistance benefits, Section 2019(d) is constitutionally infirm for the reason that it impermissibly infringes on the exclusive domain of state and local governments, in violation of the Tenth Amendment. Defendants rely on the recent decision of the Supreme Court in *National League of Cities v. Usery,* ── U.S. ──, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In *National League of Cities* the Court struck down provisions of the Fair Labor Standards Act Amendments of 1974, 88 Stat. 55, which extended the minimum-wage and maximum-hour requirements of the Fair Labor Standards Act (FLSA) to employees of state and local governments. The Court found that the effect of the extension of the FLSA to state and local governments was "to force directly upon the States [Congress'] choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." *Id.* 96 S.Ct. at 2476. Such interference, the Court held, was beyond the power conferred on Congress by the Commerce Clause, U.S.Const. art. I, § 8, cl. 3, under which the challenged provisions had been enacted.

The holding of *National League of Cities* has no application to the present case. The statute here in question was enacted under both the Commerce Clause and the Spending Power Clause, U.S.Const. art. I, § 8, cl. 1. 7 U.S.C. § 2011. Federally-imposed restrictions on state and local government activities which accompany federal grants administered by the states have long been regarded as unobjectionable exercises of the Spending Power. *E. g., King v. Smith, supra,* at 316–17, 88 S.Ct. 2128; *Oklahoma v. United States Civil Service Commission,* 330 U.S. 127, 142–44, 67 S.Ct. 544, 91 L.Ed. 794 (1947). And in *National League of Cities* the Court explicitly noted that it was concerned in that case only with Congressional action under the Commerce Clause and not with the exercise of other powers, such as those conferred on Congress by the Spending Power Clause and Section 5 of the Fourteenth Amendment. 96 S.Ct. at 2474, n. 17. *See also Fitzpatrick v. Bitzer,* ── U.S. ──, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The imposition of the requirement of Section 2019(d) that state and local governments not reduce welfare grants to food stamp recipients is clearly and reasonably in furtherance of Congress' intent to raise the nutritional levels of low-income persons. As such, it is a valid, unexceptional exercise of the Spending Power. *See Oklahoma v. United States Civil Service Commission, supra,* at 143, 67 S.Ct. 544.[8]

---

7. Defendants have not directly challenged the validity of Regulation 271.1(c). As an interpretation of the Act by the federal authorities "charged with its execution," deference should be given to the Secretary's interpretation. *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). The regulation is consistent with the intent of Congress to ensure that food stamp recipients not forfeit other assistance to which they would be entitled. Congress could not have intended any other result.

8. In addition, the operation and practical effect of the federal statute is very different here than in *National League of Cities.* Unlike the FLSA

* * *

The Court holds that defendants violated Section 2019(d) of the Federal Food Stamp Act of 1964, as amended, by taking an applicant's receipt of federal food stamps into account in determining the benefits to which she/he is entitled under the general assistance program.

Judgment will be entered in favor of the plaintiff class in each case declaring that defendants' reduction of plaintiffs' general assistance benefits as a consequence of their receipt of federal food stamps violates 7 U.S.C. § 2019(d); permanently enjoining defendants from reducing plaintiffs' general assistance benefits as a consequence of their receipt of federal food stamps; and ordering defendants to make payment to the members of the plaintiff class of the amount of general assistance benefits illegally withheld by reason of their receipt of federal food stamps prior to the issuance of the temporary restraining order. Plaintiffs in each case may submit a proposed form of judgment, with notice to defendants, within ten days. Defendants may present their comments thereon within five days thereafter.

IT IS SO ORDERED.

## APPENDIX

*Maine General Assistance Statutes*

The relevant portions of the Maine General Assistance statutes, 22 Me.Rev.Stat.Ann. §§ 4450–4508, provide as follows:

§ 4497. Municipal relief of the poor:

. . .

Overseers of the poor of a municipality or some person or persons designated by them to act in their behalf shall have the care of all eligible persons who are residents of the municipality and shall cause them to be relieved at the expense of that municipality, except as provided in section 4499. . . .

Overseers of the poor of a municipality shall also have the care of eligible persons who apply to them for assistance and who are neither residents of that municipality nor of any other municipality and shall cause them to be relieved at the expense of that municipality.

Overseers of the poor and other officers having charge of the administration of welfare funds shall keep full and accurate records of the names of indigent persons so relieved or supported, together with the amounts paid by them for such support and relief and shall make annual returns of the number of such persons supported and relieved, with the costs, to the Department of Health and Welfare.

* * * * * *

§ 4498—unincorporated places

When such organized municipality grants assistance to persons from an unincorporated or unorganized township, the municipality shall be reimbursed 100% for welfare costs to such individuals. In addition, the Department of Health and Welfare may appoint agents within the unorganized townships to administer the program.

§ 4499. Costs; limit

When a municipality incurs net costs for furnishing such general relief in any

---

amendments, which the states had no choice but to obey, the requirements of the Federal Food Stamp Act are not mandatory, but are impressed on state and local governments only as a condition of participation in the food stamp program. The decision whether to participate is voluntary with the states. *See* 7 U.S.C. § 2019(e). *Cf. King v. Smith, supra,* at 316–17, 88 S.Ct. 2128. Since there is no requirement that a state participate, there is no coercion and thus no possible interference with state sovereignty. *See Steward Machine Co. v. Davis,* 301 U.S. 548, 586–90, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). It is true that the municipal

defendants themselves cannot opt out if the State of Maine decides to participate. *See* 7 U.S.C. § 2019(e). But, as creatures of the State, *see e. g., Burkett v. Youngs,* 135 Me. 459, 199 A. 619 (1938); *Sawyer v. Gilmore,* 109 Me. 169, 83 A. 673 (1912), the municipal defendants must be bound by the State's decision to acquiesce in Section 2019(d). It would be impossible to carry out the purposes of federal spending legislation if the subdivisions of states retained the power to reject the conditions that Congress has placed on state receipt of federal monies.

fiscal year in excess of .0006 of that municipality's state valuation as determined by the State Tax Assessor in the statement filed by him as provided in Title 36, section 381, the Department of Health and Welfare shall reimburse the municipality for 90% of the amount in excess of such expenditures which the department considers to be reasonable and appropriate. For the purposes of this section, the municipal officers shall submit to the Department of Health and Welfare a monthly return on forms provided by the department stating the amount of net costs for furnishing general relief beginning at the end of the month in which the municipality's general relief expenditures exceed the ceiling formula stated in this section.

\*　　\*　　\*　　\*　　\*　　\*

§ 4504.  Establishment of rules and regulations

A program for municipal support of the poor under this chapter shall be operated and administered in accordance with written rules and regulations.  Such rules and regulations shall include standards of eligibility, governing need and amount of assistance, for the receipt of general assistance.  Such rules and regulations shall be available in the town office and otherwise easily accessible to any member of the public.  Notice to that effect shall be posted.