[Civ. No. 40900. First Dist., Div. Three. Feb. 27, 1978.]

LOIS LONG et al., Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

62

## COUNSEL

Thomas M. O'Connor and George Agnost, City Attorneys, William A. Barrett and Marie Burke Lia, Deputy City Attorneys, for Defendants and Appellants.

Furth, Fahrner & Wong, Frederick P. Furth, Stitt & Dombroski, Clyde W. Stitt, Gilbert T. Graham and Mark N. Aaronson for Plaintiffs and Respondents.

## OPINION

**SCOTT, Acting P. J.**—This is an appeal from an order invalidating standards of aid and care for indigent and dependent poor set under San Francisco's welfare program. The principal issue is whether San Francisco violated state and federal law by including the value of food stamps in setting welfare benefit levels. Before we reach that issue, however, we will first consider appellant City and County of San Francisco's contention that the trial court was without jurisdiction to make its order.

## I. PROCEDURAL HISTORY

These proceedings began as a class action by welfare recipients seeking a declaration that benefit levels under the San Francisco General Assistance Program did not meet state standards, and seeking writ of mandate to compel compliance. The trial court issued an order directing the San Francisco Social Services Commission to hold a public hearing, after which the court would determine welfare standards.

The City and County of San Francisco petitioned this court for writ of mandate to vacate the trial court order. Division Two of this court denied the petition, but modified the trial court order to require that the San Francisco Department of Social Services (functioning through the social services commission) establish standards and further directed that the "court will thereafter *review the appropriateness of the standards adopted by the Department of Social Services* and make such other and further orders as the court deems appropriate." *(City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 51 [128 Cal.Rptr. 712].)

On August 3, 1976, in response to the Division Two decision, the social services commission met and approved an increase in general assistance levels to $157 for an individual (from $83 or $88) and $258 for a couple, and effective January 1, 1977, to $166 for an individual and $273 for a couple. On August 10, 1976, the day before the commission's standards were to be submitted to the court, the board of supervisors amended the San Francisco Administrative Code to empower the board of supervisors, rather than the social services commission (i.e., the department of social services), to adopt standards of aid and care.

In proceedings brought by the welfare recipients to enforce the commission's August 3 standards, the City and County of San Francisco argued that the commission's standards should not be reviewed, but that the proceedings should be continued until the board of supervisors could establish new standards of aid and care. Robert Carleson & Associates were hired to perform a study for the board to assist it in setting benefit levels.

On November 9, 1976, the court ordered San Francisco to implement the August 3 standards on or before November 15, 1976. The next day the Carleson report was submitted to the board of supervisors, and on November 13, 1976, the board adopted emergency legislation (Ord. No. 451-76) setting assistance levels at $96 for an individual and $145 for a couple, plus Fast Pass (a monthly bus ticket) and federal food stamps.

The welfare recipients thereafter brought contempt proceedings based upon San Francisco's failure to comply with the November 9, 1976 court order directing implementation of the August 3 standards. San Francisco responded by arguing that its ordinance of November 13, 1976 superseded the August 3 standards and complied with the requirement that it set standards for aid and care. After hearing, the court ordered that the

assistance standards established August 3 be provided for the period from September 1, 1976, to and including November 15, 1976, the effective date of Ordinance No. 451-76. The court did not reach the question of the validity of the ordinance.

On December 21, 1976, the welfare recipients noticed a motion to "review and invalidate" the general assistance standards set by Ordinance No. 451-76. At a hearing on the motion, the trial court, over objection by the City and County of San Francisco, concluded that it had jurisdiction to consider the standards set by the November 13, 1976, ordinance, and based upon examination of various general assistance standards submitted and discussed "throughout the course of these proceedings," concluded that the November 13 standards were not consistent with the mandate of the Welfare and Institutions Code.

The court ordered that the August 3 standards remain in full force and effect until such time as the board of supervisors would set new standards. The order was based upon the court's determination that the November 13 standards were invalid and that the August 3 standards were "within the fixed boundaries consistent with and reasonably necessary to effectuate the objectives of the Welfare and Institutions Code." The court found that the City and County of San Francisco had contemplated the availability of food stamps in computing its November 13 benefit package, and that the standards were inconsistent with Welfare and Institutions Code sections 18900 and 18908 and with 7 United States Code section 2019(d).

It is from this order that the City and County of San Francisco appeals.

## II. JURISDICTION

■ Appellants first contend that the trial court was without jurisdiction to review Ordinance No. 451-76. They argue that the November 9, 1976, peremptory writ and the subsequent orders directing application of the August 3, 1976, social services commission standards through November 15, 1976, constituted a final judgment resolving all issues raised by the initial complaint. They contend that the cause of action having been extinguished, the only appropriate remedy for respondents was to initiate a new action or move to vacate the judgment. They conclude that the "motion to review and invalidate" Ordinance No.

451-76 was therefore improper and that the trial court exceeded its jurisdiction in deciding the question upon such motion.

Division Two's decision had the effect of ordering the social services department and the social services commission to adopt standards of aid and care and of directing the trial court to *"review the appropriateness of the standards adopted by the Department of Social Services* and make such other and further orders as the court deems appropriate." (*City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d at p. 51.) Before the board of supervisors removed its authority to set standards, the commission was attempting to comply with the court order. The board then removed the commission's authority on the eve of its submission of its standards, and the city and county disavowed the commission's standards.

Had the City and County of San Francisco adopted the social service commission's standards of August 3, 1976, as theirs and presented them to the trial court for review, appellants' arguments would have been persuasive. The court's review of the August 3, 1976, standards would have satisfied the Division Two decision and ended the trial court proceedings initiated by the original complaint. However, the city and county at all times denied the validity of the social service commission's standards and urged the trial court to delay review until the board of supervisors could adopt its standards.

Appellants' efforts were not entirely successful because the trial court did review the August 3 standards and order their implementation. However, it is clear that the trial court substantially complied with the wishes of the city and county by treating the commission's standards as only interim standards, applicable only until November 15, 1976, the effective date of the board's ordinance. The court then undertook the review of the board's standards urged by the city and county in its earlier arguments. By arguing throughout that the court should not review the commission's standards but should wait to review those set by the board of supervisors, appellants waived any contention they might have had that the court's acceptance of the commission's standards *as interim standards* fully disposed of the issues raised in the complaint and fully satisfied the Division Two decision. It is true that the order, as modified by the Division Two decision, stated only that the court would *"review the appropriateness of the standards adopted by the Department of Social Services,"* and that the court here also reviewed standards adopted by the board. However, Division Two was not required to anticipate that the

board would relieve the department of its authority to set standards. The order must be interpreted as directing review of the standards adopted by the department of social services *or any other body authorized to adopt such standards.*

We conclude, therefore, that the court had jurisdiction to review the validity of Ordinance No. 451-76 adopted by the board of supervisors.

## III. VALIDITY OF SAN FRANCISCO WELFARE AID STANDARDS

We turn now to the validity of the ordinance.

The order from which this appeal is taken contains a finding that the City and County of San Francisco contemplated availability of food stamps in computing the November 13, 1976, benefit package. The court. concluded that in doing so it had violated Welfare and Institutions Code sections 18900 and 18908, 7 United States Code section 2019(d), and *Dupler* v. *City of Portland* (D.Me. 1976) 421 F.Supp. 1314.

■ A. Appellants first contend that they were denied an evidentiary hearing on the validity of their ordinance. However, appellants do not dispute that the welfare standards were based upon the Carleson report and that the court knew what they were. There is no question that the Carleson report, which was a part of the superior court file, took food stamps into account in making its recommendation, upon which the board of supervisors relied in enacting Ordinance No. 451-76. Computations in the Carleson report clearly reveal consideration of the availability of food stamps, and the ordinance itself encourages participation in the food stamp program. In fact, in the Carleson report $42 in food stamp purchasing power are specifically added to the $107 cash and Fast Pass award to show that the welfare recipient is supported at the level of $149 per month. A further evidentiary hearing was unnecessary. Upon these undisputed facts the trial court properly determined, as a question of law, the validity of the ordinance.

■ B. Appellants contend that the establishment of standards of aid and care is a legislative matter over which the board of supervisors had broad discretion. They contend that the judiciary should interfere only where the action is fraudulent or so palpably unreasonable as to indicate an abuse of discretion as a matter of law. They assert that Ordinance No. 451-76 was not unreasonable on its face, was supported by adequate

study in the form of the Carleson report, and satisfied the Division Two decision.

Respondents contend that the benefit level of $107 per month is arbitrary and capricious when compared to the evidence showing minimum need levels of $157, $161, or $163.76 per month. It is clear, however, that their argument is based largely upon the fact that food stamp consideration caused the aid level to be set at $107, instead of the more reasonable $149 identified by the Carleson report and utilized in reaching the $107 figure.

Welfare and Institutions Code sections 17000 and 17001 have been interpreted "to confer upon the county a broad discretion 'to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief.' [Citations.] [¶] This discretion, however, can be exercised only within fixed boundaries. In administering general assistance relief the county acts as an agent of the state. [Citation.] When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose." (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 678-679 [94 Cal.Rptr. 279, 483 P.2d 1231]; *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d at p. 49.) In *Mooney,* the court struck a regulation making an employable single man ineligible for general assistance. Similarly, in *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 92 [88 Cal.Rptr. 907, 43 A.L.R.3d 537], the court struck a regulation excluding alcoholics from "Aid to the Needy Disabled." (See also *Rogers* v. *Detrich* (1976) 58 Cal.App.3d 90 [128 Cal.Rptr. 261].) However, no case has been cited or found in which welfare standards have been struck on the sole ground that they were inadequate in amount.

Here, if food stamps are properly considered, the indigent recipient of general assistance is supported at the level of $149 per month. That figure is close to the social services commission's level of $157 and to the evidence presented by respondents in the original proceedings before the trial court—$161 was the figure reached in the study submitted there and noted by Division Two in its opinion (57 Cal.App.3d at p. 49). In light of the fact that the $149 figure was supported by the Carleson report and in light of respondents' failure to present evidence to show that that figure was unreasonable, unless food stamps were improperly considered the trial court erred in invalidating the standard. In light of the range of

evidence, a figure of $149 could not be found unreasonable or an abuse of the legislative body's broad discretion.

The critical question is whether the board of supervisors acted correctly in taking food stamps into account in setting benefit levels. If food stamps are allowed to bring the benefit package up to $149, the trial court erred in invalidating the ordinance. If they are not allowed, clearly $107 per month was unreasonable.

■ C. We now consider whether the ordinance improperly considered the use of food stamps in setting welfare aid amounts. The federal food stamp program (Federal Food Stamp Act of 1964, 78 Stat. 703, as amended, 7 U.S.C. §§ 2011-2025) allows needy persons or families meeting the eligibility standards of the Food Stamp Act to purchase coupons redeemable for food at retail stores. The cost of the coupons is paid by the federal government, and the program is administered by the states. (See *Dupler* v. *City of Portland, supra,* 421 F.Supp. at p. 1317.) Section 2019(d) of the act provides that "Participating States or participating political subdivisions thereof shall not decrease welfare grants or other similar aid extended to any person or persons as a consequence of such person's or persons' participation in benefits made available under the provisions of this chapter or the regulations issued pursuant to this chapter." (See also 7 C.F.R. § 271.1(c).)

In *Dupler* the representative plaintiff, who had been receiving $18 per week for food, based upon guidelines set by the City of Portland, began to receive only $1 per week from the city when she became eligible to buy $18 worth of food stamps for that $1. The *Dupler* court, in invalidating the Portland guidelines, relied upon the declaration of policy contained in section 2011 of the Food Stamp Act—"to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households"—and legislative history of the act, which made clear that "the intent of Congress was not to provide a substitute for other forms of aid to low-income persons but to supplement that aid in order to improve their level of nutrition." The court found that the action of the City of Portland would have the effect not of raising the nutritional levels, but merely of maintaining preexisting levels, thereby frustrating the purpose of the act. The court rejected the argument that its conclusion required duplication of payments designed to meet the same need, finding that the federal food stamps were supplementary to city programs, not duplicative of them. (421 F.Supp. at pp. 1318-1319.)

Appellants' attempt to distinguish *Dupler* rests upon the fact that here all general assistance recipients receive the same assistance (if otherwise similarly situated), whereas in *Dupler* those receiving food stamps received less from the city than similarly situated persons not receiving food stamps. They contend that *Dupler* holds only that a person's receipt of food stamps cannot be made a basis for reduction in welfare payments. They argue that it is permissible to set welfare levels based upon probable eligibility for food stamps as long as there is no discrimination between those actually receiving stamps and those not receiving them. (Cf. *Smith* v. *Department of Public Aid* (1977) 67 Ill.2d 529 [367 N.E.2d 1286, 1291].)

Neither the holding nor the language of *Dupler* suggests that discrimination between recipients and nonrecipients forms a basis for the decision. The legislative history of the act would not sustain such an interpretation. The purposes for the Food Stamp Act were to improve the nutrition of low-income families (*Dupler, supra,* at p. 1318) and to strengthen the agricultural economy (see 1964 U.S. Code Cong. & Admin. News, pp. 3275-3292). If a municipality could set its relief standards by reference to food stamp availability, both of these goals could be thwarted. As in the *Dupler* case, a recipient's food expenses could be kept constant by the simple expedient of reducing welfare grants to the extent of the food stamp subsidy. With constant food expenditures the recipient's nutrition would not improve and the agricultural economy would not be stimulated.[1]

Appellants here have even gone a step beyond *Dupler*. Not only do food stamp recipients receive no benefit from the stamps, but those who do not have food stamps have their food allotments set at the level of the food stamp recipients. Thus, there is even less money available for food than would have been available without food stamps. *Dupler* was based upon the fact that section 2019(d) was violated by the reduction in benefits based upon receipt of food stamps. It follows that the section

[1]Both *Knebel* v. *Hein* (1977) 429 U.S. 288 [50 L.Ed.2d 485, 97 S.Ct. 549], and *Smith* v. *Department of Public Aid* (1977) 67 Ill.2d 529 [367 N.E.2d 1286], are cited by appellants for the proposition that a reduction in welfare based upon food stamps is permissible. However, both of those cases involved only increases in the *price* of food stamps because of other income to recipients. The courts rejected arguments that the increased price of food stamps had the effect of decreasing welfare benefits. Those two cases are distinguished by the fact that they only indirectly involved welfare, and that any "decrease" in spendable welfare funds was caused by an increase in the recipient's overall purchasing power. Application of their principles to this case would nullify section 2019(d).

and purposes of the act are violated here, where benefits are reduced merely on the basis of probable availability of food stamps.[2]

Appellants attempt to avoid the conclusion that they acted improperly by arguing that the existence of Welfare and Institutions Code sections 18900, 18904, 18904.1 and 18908, which build the federal food stamp program into the general assistance program, somehow allows local government to consider food stamps in setting assistance levels.

Section 18900 of the Welfare and Institutions Code provides as follows: "Finding that hunger, undernutrition, and malnutrition are present and continuing problems faced by low-income California households, and further finding that the federal food stamp program offers significant health-vital benefits, the purpose of this chapter is to establish a statewide program to enable recipients of aid under Parts 3 and 5 of this division and other low-income households to purchase food stamps under the Federal Food Stamp Act of 1964 as amended. Added Stats 1973 ch 1216 § 68, effective December 5, 1973, operative January 1, 1974." Sections 18904 and 18904.1 set forth procedures for issuance of food stamps, and provide, inter alia, that upon request by the recipient the amount needed to purchase food stamps may be deducted from the recipient's welfare grant (§ 18904.1, subd. (b)(1)(i)).

Although these sections do show a relationship between *administration* of general assistance and the food stamp program, they do not require the conclusion that food stamps may be used to replace welfare payments. In fact, section 18908 provides: "Except as provided in Section 18904.1, federal supplemental security income benefits, state supplemental security program benefits, public assistance, and county aid benefits shall not be reduced as a consequence of the purchase by recipients of food stamps under this chapter, to the extent permitted by federal law. Added Stats 1973 ch 1216 § 68, effective December 5, 1973, operative January 1, 1974." Reading sections 18904.1 and 18908 together,

---

[2]It might be argued that section 2019(d) acts harshly where a state or locality has, on its own, established food benefits consistent with a high nutritional level. It is true that the statute fails to reward such a state or locality. However, in light of the general applicability of the statute to the 50 states, the good efforts of some states or localities cannot form the basis for an interpretation of the statute to allow for consideration of food stamps in setting welfare levels. If states or localities where nutritional needs are not met were left free to consider food stamps in setting their standards, the purposes of the Food Stamp Program would be frustrated in those places. And if it be argued that there are now no or few states or localities providing inadequate food benefits, the answer is that it may be time to repeal section 2019(d). The judiciary cannot make such a legislative determination.

it is apparent that general assistance may be reduced only upon request and then only in order to withdraw the cash necessary to purchase food stamps. Thus, those sections may not be read to provide some escape from the requirement of 7 United States Code section 2019(d). In fact, section 18908, read in conjunction with section 2019(d), shows that state law is simultaneously violated by the reduction in benefits based on food stamp availability.

We conclude that San Francisco Ordinance No. 451-76 is invalid in that the welfare aid standards adopted violate both federal and state statutes prohibiting a reduction of benefits as a consequence of the availability of food stamps to welfare recipients.

Judgment is affirmed.

Feinberg, J., and Terry, J.,* concurred.

A petition for a rehearing was denied March 29, 1978, and appellants' petition for a hearing by the Supreme Court was denied April 27, 1978.

---

*Assigned by the Chairperson of the Judicial Council.