937 F.2d 1439
 1992 A.M.C. 149
 Richard NEWBY; Whitney Fidalgo Seafoods, Inc., a Marine
Corporation, Plaintiffs-Appellees,
v.
F/V KRISTEN GAIL, Official No. 618791, her engines, tackle
gear, equipment and appurtenances, Defendant.
and
Bruce E. JOYCE; Jane Doe Joyce,
Defendants/Third-Party-Defendants/Appellants,
v.
Steven N. SLOTVIG; Jane Doe Slotvig,
Defendants/Third-Party-Defendants/Appellees.
Richard NEWBY; Whitney Fidalgo Seafoods, Inc., a Marine
Corporation, Plaintiffs-Appellees,
v.
F/V KRISTEN GAIL, Official No. 618791, her engines, tackle
gear, equipment and appurtenances, Defendant,
v.
Bruce E. JOYCE; Jane Doe Joyce,
Defendants/Third-Party-Plaintiffs/Appellees,
v.
Steven N. SLOTVIG; Jane Doe Slotvig, husband and wife,
Defendants/Third-Party-Defendants/Appellants.
 Nos. 89-35739, 89-35775.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 6, 1990.
Decided July 2, 1991.
 
 Richard L. Phillips, Mikkelborg, Broz, Wells & Fryer, Seattle, Washington, for defendants-third-party-defendants-appellants-appellees.
 Karl F. Oles, Danielson, Harrigan & Tollefson, Seattle, Wash., for plaintiffs-appellees.
 Gregory J. Lawless, Mullavey, Prout, Grenley, Foe, Lawless & Dahl, Seattle, Wash., for defendants-third-party-defendants-appellees-appellants.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, GOODWIN and NOONAN, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 This admiralty case arises out of the July 1, 1985, collision between the steel-hulled fishing vessel F/V KRISTEN GAIL ("KRISTEN GAIL") and the wooden scow CIRUS as they were traveling down the Egegik River in Alaska. Plaintiffs-appellees Richard Newby and Whitney Fidalgo Seafoods (collectively "Newby") brought suit in rem against the KRISTEN GAIL and in personam against the owner of the KRISTEN GAIL, Bruce Joyce, seeking to recover the cost of repairs and lost profits resulting from the collision. Joyce then filed a third-party complaint against Steven Slotvig, master of the KRISTEN GAIL, seeking indemnification in the event Joyce should be found liable.
 
 
 2
 After a bench trial, the district court found the KRISTEN GAIL was an overtaking vessel as described in the rules of the nautical road set forth in 33 C.F.R. Sec. 81, Appendix A (1990), and that her failure to keep out of the CIRUS's way was the principal cause of the collision. The court determined that although the KRISTEN GAIL's crew were appropriately stationed given the visibility conditions, crew members were delinquent in their lookout responsibilities. The skipper and crew of the CIRUS, however, were also deemed negligent in that they failed to see the KRISTEN GAIL on radar. Consequently, the district court held that the comparative fault of the KRISTEN GAIL and CIRUS was 80% and 20%, respectively.[1] The court ruled that the fault attributed to the KRISTEN GAIL should be assigned in equal proportions to Slotvig and the crew.
 
 
 3
 In this case we consider three issues: first, whether the district court erred in finding that the KRISTEN GAIL was an overtaking vessel; second, whether the district court erred in finding that the failure of the KRISTEN GAIL to keep out of the CIRUS's way was the principal cause of the collision, so that the KRISTEN GAIL's comparative fault is 80%; and third, whether the district court erred in attributing the fault of the KRISTEN GAIL in equal proportions to the master and crew. With regard to the third issue, we also consider whether the district court erred in refusing to find Slotvig liable for the negligence of his crew.I. Overtaking Vessel
 
 
 4
 Whether an overtaking situation existed is a factual question and is therefore reviewed under the clearly erroneous standard. Woods v. United States, 724 F.2d 1444, 1451 (9th Cir.1984). A finding of fact is clearly erroneous if the appellate court "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). No such conviction can arise if the district court's determinations are "plausible in light of the record viewed in its entirety." Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The district court's findings are entitled to special deference when they are based on evaluations regarding the credibility of witnesses. Id. at 575, 105 S.Ct. at 1512.
 
 
 5
 The 1972 Collision Regulations apply to Alaska waters, 33 C.F.R. Sec. 80.1705 (1990), and they are set forth at 33 C.F.R. Sec. 81, Appendix A (1990). Rule 13 of these regulations governs overtaking situations, and in part it provides:
 
 
 6
 (b) A vessel shall be deemed to be overtaking when coming up with another vessel from a direction more than 22.5 degrees abaft her beam....
 
 
 7
 (c) When a vessel is in any doubt as to whether she is overtaking another, she shall assume that this is the case and act accordingly.
 
 
 8
 The district court found that the KRISTEN GAIL was an overtaking vessel as described in Rule 13 and that her failure to keep out of the way of the overtaken vessel CIRUS was the principal cause of the collision.
 
 
 9
 The district court was presented with conflicting testimony, and it heard evidence that would support a variety of findings concerning the relative positions of the vessels. Because the court did not clearly err in concluding that the KRISTEN GAIL was an overtaking vessel, its determination on this point is affirmed.
 
 
 10
 II. Comparative Fault Between the KRISTEN GAIL and CIRUS
 
 
 11
 Joyce and Slotvig argue that the district court erroneously concluded that the KRISTEN GAIL was 80% responsible for the collision. The court found that the KRISTEN GAIL was proceeding at a rate of speed that was reasonable given the visibility conditions and that its crew members were appropriately on duty. Lookouts were posted on board the KRISTEN GAIL and specifically assigned the task of watching ahead and to the port side. Although the radar was being monitored aboard the KRISTEN GAIL, it could not be depended upon to spot a wooden-hulled scow such as the CIRUS.
 
 
 12
 On board the CIRUS, no one was assigned specifically to watch the starboard side, from which the KRISTEN GAIL was approaching. In spite of the foggy weather, one of the crewmen aboard the CIRUS sat in the galley doing a puzzle. The court found that the skipper and crew of the CIRUS were negligent in failing to see the KRISTEN GAIL, a steel-hulled ship, on radar. Moreover, the court stated that the CIRUS would have successfully avoided the collision had the KRISTEN GAIL been noticed earlier on radar.
 
 
 13
 Newby maintains that insofar as the KRISTEN GAIL was an overtaking vessel, she had the duty to keep clear. Rule 13(a). Even if the KRISTEN GAIL was in doubt concerning whether it was overtaking, it should have assumed it was overtaking and acted accordingly. Rule 13(c). Upon turning to port in an effort to avoid collision, the KRISTEN GAIL was required to indicate her intention by issuing blasts on her whistle. Rule 34(a). Finally, the KRISTEN GAIL was obligated to have her engines prepared for immediate maneuvers since she was navigating in an area of restricted visibility. Rule 19(b). Because the KRISTEN GAIL violated each of these duties, Newby argues the district court's apportionment of fault is correct.
 
 
 14
 Determinations of negligence and awards of damages are factual findings and, therefore, reviewed under the clearly erroneous standard. See Schenk v. Government of Guam, 609 F.2d 387, 390 (9th Cir.1979) (discussing negligence); Woods, 724 F.2d at 1451. Although Joyce and Slotvig argue that the proportional fault of the KRISTEN GAIL should have been less than 80%, their contentions do not create a definite and firm conviction that a mistake has been made by the district court. See U.S. Gypsum, 333 U.S. at 395, 68 S.Ct. at 541. Therefore, the apportionment of fault is affirmed.
 
 
 15
 III. Fault and Liability Aboard the KRISTEN GAIL
 
 1. Comparative Fault
 
 16
 The district court held that the fault of the KRISTEN GAIL should be attributed in equal proportions to the vessel's master and crew. Joyce argues that Slotvig was wholly responsible for the collision and that insofar as the court's determination is a conclusion of law, it is reviewed de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Joyce's contentions rest on the proposition that Slotvig alone was responsible as a matter of law for navigating the vessel, and that because the remaining crew were acting under his direction and control, their actions and inactions are attributable to him. Thus, to the extent the collision arose from the KRISTEN GAIL's failure to keep out of the way as an overtaking vessel, Joyce claims that Slotvig must bear complete responsibility for any navigational errors that resulted in collision.
 
 
 17
 Slotvig contends that fault aboard the KRISTEN GAIL should be attributed to the crewmen--all of whom were hired by Joyce--who were watching from the bow and port sides. Slotvig notes that he assigned members of his crew to lookout posts which should have provided warnings of any craft ahead and to the port side. Had these crew members discharged their duties properly, Slotvig says, the collision would have been avoided. Hence, Slotvig concludes that he should be relieved of any blame because the negligence of the crew cannot be attributed to the skipper under these conditions.
 
 
 18
 In arguing that Slotvig should bear all of the fault for the accident, Joyce contends that Slotvig's failure to obey nautical rules of the road was the cause of the collision. In stating that the crew should shoulder the blame for the accident, Slotvig suggests that incompetent lookouts were responsible for the collision. In making its determination, the district court accepted both theories and apportioned fault equally.
 
 
 19
 In United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 410-11, 95 S.Ct. 1708, 1715-16, 44 L.Ed.2d 251 (1975), the Supreme Court rejected the rule of divided damages in admiralty and replaced it with a comparative fault scheme.
 
 
 20
 We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.
 
 
 21
 Id. at 411, 95 S.Ct. at 1715-16. Slotvig, however, argues that "principles of comparative negligence are not applicable when damages can be apportioned to separate causes based on evidence in the record." Protectus Alpha Navigation Co., Ltd. v. North Pacific Grain Growers, Inc., 767 F.2d 1379, 1383 (9th Cir.1985); Restatement (Second) of Torts Sec. 433A (1965), Sec. 881 (1979). Slotvig concludes that insofar as the district court's findings indicate that fault should rest with the crewmen watching the bow and port side, he should not be liable for damages.
 
 
 22
 Slotvig's argument that the district court erred in applying a rule of comparative fault, rather than one of separate causation, is flawed. The doctrine of comparative negligence--and by extension the holding in Reliable Transfer--has no application in circumstances where injuries can be apportioned to separate causes. But here, where damages cannot be separately apportioned, comparative negligence is the governing scheme. As we held in Kalland v. North American Van Lines, 716 F.2d 570, 573 (9th Cir.1983): "The whole point of comparative negligence is that the relation between injury and cause cannot be accurately determined, and an allocation based on the degree of negligence of each party becomes the measure of liability."
 
 
 23
 Although the court does not explicitly set forth how it arrived at its legal conclusion that fault should be attributed equally to Slotvig and the crew, it apparently believed that Slotvig's navigational errors and the crew's delinquent lookout each contributed equally to the collision. The court's conclusions are sufficiently supported by the evidence.
 
 2. Indemnity
 
 24
 The district court held that Slotvig's duty to indemnify Joyce would arise only upon a showing of actual fault on Slotvig's part and would be limited to that proportion of the loss that was solely attributable to Slotvig. Joyce, however, argues that Slotvig should be required to indemnify him for all of the damages he must pay Newby, including those additional losses incurred by reason of the crew's negligence.
 
 
 25
 Joyce's claim for indemnity against Slotvig is based on agency principles. The Restatement (Second) of Agency Sec. 405 (1958) provides:
 
 Liability for Conduct of Other Agents:
 
 26
 (1) Except as stated in Subsections (2) and (3), an agent is not subject to liability to the principal for the conduct of other agents who are not his subagents.
 
 
 27
 (2) An agent is subject to liability to the principal if, having a duty to appoint or to supervise other agents, he has violated his duty through lack of care or otherwise in the appointment or supervision, and harm thereby results to the principal in a foreseeable manner. He is also subject to liability if he directs, permits, or otherwise takes part in the improper conduct of other agents.
 
 
 28
 (3) An agent is subject to liability to a principal for the failure of another agent to perform a service which he and such others have jointly contracted to perform for the principal.
 
 
 29
 Joyce relies on subsections (2) and (3) to argue that he is entitled to bring an indemnification action against his agent Slotvig for losses caused by other agents, i.e., the crew. Joyce maintains that Slotvig had a duty to supervise the crew and that he violated this duty through lack of care. Because the crew is responsible to the skipper and the skipper is responsible for the overall safe conduct of the voyage, Joyce concludes that any fault of the KRISTEN GAIL must be attributed to Slotvig.
 
 
 30
 Slotvig relies on subsection (1) to demonstrate that he is not liable to Joyce for that proportion of the negligence attributed to the crew. Slotvig emphasizes that a subagency arises when a principal empowers his agent to employ the agent's own representatives to perform the work of the principal. See Section 406, comment a. In this case, Joyce never authorized Slotvig to hire his own representatives; instead, Joyce himself hired the crew. Consequently, no subagency arose and Slotvig cannot be held responsible for the crew's negligence.
 
 
 31
 With respect to subsection (2), Slotvig notes that an agent is liable for the acts of other agents in only two circumstances: first, where he has been negligent in appointing the agents; and second, where he has been negligent in supervising the agents. See Section 405, comment a. The first condition is not met because the crew were appointed by Joyce. The second condition is not met because the court specifically found the crew were appropriately on duty given the conditions then existing. Consequently, the second subsection is inapplicable.
 
 
 32
 With respect to subsection (3), Slotvig observes that joint contractors are persons who are parties to the same contract and who promise the same performance. See Section 405, comment b. Because Slotvig and the crew were hired under separate contracts, they are not joint contractors and the third subsection does not apply.
 
 
 33
 The record demonstrates that the crew were neither subagents of Slotvig nor joint contractors with him; thus, this issue, even in the maritime context, is governed by the first subsection of Section 405. Joyce fails to cite any controlling authority to support his claim that the master of a vessel is liable to the owner for losses resulting from the crew's negligence in circumstances such as those now before us. In light of the Supreme Court's holding in Reliable Transfer, the appropriate rule in collision cases is one of partial indemnity based on percentage fault. Therefore, Slotvig's duty to indemnify Joyce is contingent upon a finding of actual fault on the part of Slotvig and limited to that percentage of Joyce's loss solely attributable to Slotvig.
 
 
 34
 Joyce alleges that the district court erred in attributing any negligence to the crew and maintains that Slotvig is solely responsible for the collision. Findings of negligence are typically reviewed as findings of fact, Schenk, 609 F.2d at 390, and such findings are reviewed under the clearly erroneous standard. Woods, 724 F.2d at 1451. Because Joyce's arguments do not create a "definite and firm conviction that a mistake has been committed," U.S. Gypsum, 333 U.S. at 395, 68 S.Ct. at 542, the district court's conclusion will not be disturbed.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 In its initial statement of findings dated August 17, 1989, the district court inadvertently reversed the proportions of fault between the two vessels and attributed only 20% of the fault to the KRISTEN GAIL. This mistake was corrected in the Judgment issued on September 11, 1989