(No. 48510.-

BARBARA SMITH *et al.*, Appellees, v. THE DEPART-
MENT OF PUBLIC AID *et al.*, Appellants.

*Opinion filed September 20, 1977.*

William J. Scott, Attorney General, of Springfield (Paul V. Esposito and Donald Townsend, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Whitney D. Hardy, of the Land of Lincoln Legal Assistance Foundation, Inc., of Danville, for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

In September of 1974 the Vermilion County Depart-

ment of Public Aid, acting pursuant to a provision of the Illinois Food Stamp Manual, increased the purchase price of food stamps for plaintiffs, Barbara Smith and Lois Briggs. Plaintiffs appealed to the Illinois Department of Public Aid (IDPA), which affirmed the decisions of the county department. Plaintiffs then petitioned the circuit court of Vermilion County for the issuance of a common law writ of *certiorari* naming as defendants the IDPA and its director, the hearing officers of the IDPA who were involved in the cases, five employees of the Vermilion County Department of Public Aid, the United States Department of Agriculture, and its former Secretary, Earl Butz. The trial court dismissed the Federal defendants, but issued a writ of *certiorari* as to the remaining defendants. In response to the writ, the records made before the administrative body were filed. The court, after reviewing the proceedings below, entered an order declaring unconstitutional certain State and Federal statutes regulating the food stamp program, and ruled the policy of the IDPA which caused the increase in the plaintiffs' food stamp purchase price unconstitutional and illegal. The court then ordered the IDPA to reduce the monthly charge for plaintiffs' food stamps until the plaintiffs were refunded the amount which they had been overcharged. The defendants appealed directly to this court pursuant to our Rule 302(a)(1) (58 Ill. 2d R. 302(a)(1)). Plaintiffs cross-appealed against the Federal defendants, asserting error in the dismissal of their petition as to those defendants.

Barbara Smith and Lois Briggs both reside in Vermilion County, the former with her four children and one grandchild, the latter with her three children. Each plaintiff participates in both the aid to families with dependent children program (AFDC) and the food stamp program. The AFDC program created by 42 U.S.C. section 601 *et seq.* (1970) is a Federal-State program which provides financial assistance to families who are able to

meet certain requirements of dependency and need. In deciding whether a family satisfies the need requirement, the State agency which administers the program is instructed by 42 U.S.C. section 602(a)(7) (1970) to consider the income and resources of any child or relative claiming AFDC aid and of any household member whose needs are relevant to the need of the child or relative requesting aid. So as not to discourage employment by members of AFDC families, however, section 602(a)(8)(ii) exempts from this consideration $30 of the monthly earned income of such individual plus one-third of the remainder of monthly income. Smith earned $297.95 per month, so $119.50 of this income was disregarded for the purpose of determining her family's eligibility for AFDC aid. Briggs earned $500.93 per month, so she had, for AFDC purposes, an earned income exemption of $186.97.

The food stamp program was created by 7 U.S.C. section 2011 *et seq.* (1970) and, like the AFDC program, is administered in Illinois by the IDPA. Eligibility for food stamps is based upon a household's net income and resources, but AFDC families are automatically eligible. (7 C.F.R. sec. 271.3(b) (1977).) The price which an eligible household must pay for stamps is determined by the household's size and its net income and resources. Illinois Food Stamp Manual Release No. 73.1 expresses that IDPA is to consider, for purposes of computing food stamp price, that amount of earned income which is exempt for AFDC purposes. This policy is implemented by chapter 3000, topic 3350, of the Illinois Food Stamp Manual, which codifies the Federal government's table of additions to price and which, at the time, required an increase in monthly purchase price of $6 for each full $20 of exempt income under AFDC for households of three or more. Consequently, Smith's food stamp purchase price was increased by $30 monthly and Briggs' by $54 monthly.

In their petition for a writ of *certiorari* the plaintiffs

argued that (1) AFDC exempt income should be disregarded when computing the cost of food stamps because to do otherwise would contravene the intent of 42 U.S.C. section 602(a)(8) to encourage welfare recipients to seek employment; (2) the rise in food stamp prices has the effect of decreasing AFDC aid and therefore violates section 10(d) of the Food Stamp Act of 1964 (7 U.S.C. sec. 2019(d) (1970)), which provides:

> "Participating States or participating political subdivisions thereof shall not decrease welfare grants or other similar aid extended to any person or persons as a consequence of such person's or persons' participation in benefits made available under the provisions of this chapter or the regulations issued pursuant to this chapter";

and (3) the law does not provide for appeal or review of IDPA food stamp decisions and so a petitioner is deprived of due process, equal protection, and the right to a remedy.

The trial court granted the motion for dismissal of the Federal defendants based upon the doctrine of sovereign immunity. The writ of *certiorari* was issued as to the State defendants and after hearing arguments the court found that topic 3350 violates 7 U.S.C. section 2019(d) (1970) and that Release No. 73.1 is illegal and unconstitutional. Since the former is merely the implementation of the latter we take these holdings to mean that the IDPA's policy of increasing food stamp price by considering as income amounts which are exempt for AFDC purposes is illegal (violates 7 U.S.C. sec. 2019(d)) and unconstitutional. The court further held that section 11—8.7 of the Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 11—8.7) and 7 U.S.C. section 2022 (1970) "fail to provide an orderly means of Judicial Review of Respondents' decisions regarding eligibility for, termination, suspension, reduction or modification of Food Stamp benefits" and so violate the fifth and fourteenth amendments of the United

States Constitution and sections 2 and 12 of article I of the Illinois Constitution. The court then fashioned an order which would, over a period of time, compensate plaintiffs for the amount they were overcharged by a reduction in the amount plaintiffs pay for food stamps.

Of primary importance are the questions raised about the IDPA policy of including in its calculations of food stamp price earned income which is AFDC exempt. Plaintiffs argue, first of all, that this policy violates 7 U.S.C. section 2019(d) (1970). That section provides that States which take part in the food stamp program should not decrease *welfare grants* or *other similar aid* to a food stamp recipient merely because of the recipient's participation in the food stamp program. Plaintiffs argue that both their welfare grant and "other similar aid" are decreased by the IDPA and Department of Agriculture policy.

Plaintiffs' position is that, when the decision was made to consider all their earned income for food stamp purposes, this decreased the "aid" which they were provided by virtue of the earned-income AFDC exemption of the first "$30 and one-third of the remainder." Further, as the price of food stamps was thus increased, the benefit which they received from their AFDC grant was necessarily "decreased." We disagree with plaintiffs on both counts, and we refuse to give to the words "aid" and "decrease" the strained interpretations suggested by plaintiffs.

We cannot agree with plaintiffs' characterization of their earned-income exemption under AFDC as "other similar aid." The exemption is not "aid" in the sense contemplated by the statute. It does not provide to an individual any monetary aid. The reason for granting the exemption was not to extend "aid" to the recipient but to encourage the recipient and those in the household to seek employment or at least not to discourage them from seeking employment.

Plaintiffs argue further that defendants' actions violated 7 U.S.C. section 2019(d) (1970) in that the increase in food stamp price "indirectly decreased the actual [AFDC] welfare grant." To paraphrase, as the price of food stamps increases, so does the amount of AFDC money which a welfare recipient must expend to purchase those stamps. This, in effect, decreases the *net benefit* of the welfare grant because it decreases the amount of AFDC money available for non-food-stamp purposes.

A recent Supreme Court decision considered the food stamp program as it relates to other welfare programs. In *Knebel v. Hein* (1977), 429 U.S. 288, 50 L. Ed. 2d 485, 97 S. Ct. 549, appellee was the recipient of a transportation allowance which the State granted her to help defray the cost of commuting to a nurses' training program. She also received food stamps, and the price to her of these stamps was increased because the transportation allowance increased her "income" as defined by applicable Federal and State regulations. The Supreme Court upheld the inclusion in income of the transportation allowance because "the grant does give a household more food purchasing power than another household which receives no grant but incurs similar nondeductible expenses relating to training or employment." 429 U.S. 288, 295-96, 50 L. Ed. 2d 485, 492, 97 S. Ct. 549, 554.) This increment in food-purchasing power was considered controlling; the court did not address itself to the provisions of section 2019(d), although it was no less true there than in the instant case that the State had "decreased" the net benefit of a welfare grant (the transportation allowance) by increasing the food stamp price. See also *Compton v. Tennessee Department of Public Welfare* (6th Cir. 1976), 532 F.2d 561, where rent subsidy payments were treated likewise.

In *Knebel,* though not addressing itself specifically to section 2019(d), the Supreme Court did indicate its

attitude toward arguments like the one made by plaintiffs herein as follows:

"It is also contended that the regulations at issue work at cross-purposes with Title XX of the Social Security Act, which provides funding for the state program under which the travel allowance was paid. This contention is true only in the sense that the net benefit of the travel allowance is reduced by the increase in food stamp prices. But this is equally true of other government benefits, such as AFDC, which appellee concedes are properly included in income. *** We find no indication that Congress intended different treatment for training allowances. [Citations.]" 429 U.S. 288, 296 n.18, 50 L. Ed. 2d 485, 492 n.18, 97 S. Ct. 549, 554 n.18.

Section 2019(d) was specifically the subject of interpretation in *Dupler v. City of Portland* (D. Me. 1976), 421 F. Supp. 1314. In that case, as recipients of general assistance benefits began to receive Federal food stamps the city welfare officials reduced their general assistance grants to levels at which the amount of food the recipients could purchase would remain the same. The court found that this reduction was in fact a violation of 2019(d) and explained that section as follows:

"Fairly read, Section 2019(d) means that a state or municipality may not give a person receiving federal food stamps less aid than it would grant a person who is otherwise similarly situated but who is not receiving federal food stamps. *** [T]he plain import of Section 2019(d) is to prohibit welfare agencies from taking an applicant's receipt of federal food stamps into account in computing the level of benefits to which the applicant is entitled." 421 F. Supp. 1314, 1319. We agree with this interpretation of section 2019(d)

and see no violation of that section in the actions of the instant defendants. Unlike the situation in *Dupler,* the State has not actually decreased any aid to plaintiffs here. A reduction in the net benefit of AFDC aid due to an increase in food stamp price is not a decrease of a welfare grant within the meaning of section 2019(d). The State here, unlike the *Dupler* case, makes no distinction in its granting of welfare between food stamp recipients and those who do not receive food stamps. We might add that, conversely, in its administration of the food stamp program, the State does not accord differing treatment to AFDC families and non-AFDC families. In both cases the State determines food stamp prices based upon a household's purchasing power, consistent with the Supreme Court's decision in *Knebel.* To do otherwise, that is, to allow an earned-income exemption to AFDC families as plaintiffs urge, would be to discriminate against non-AFDC families whose income, and therefore whose food-purchasing power, is equally low but who, for other reasons, have not qualified for AFDC. (See *Knebel v. Hein* (1977), 429 U.S. 288, 296 n.18, 50 L. Ed. 2d 485, 492 n.18, 97 S. Ct. 549, 554 n.18.) The purpose of the Food Stamp Act of 1964 is to alleviate the hunger and malnutrition of low-income households with limited food-purchasing power. (7 U.S.C. sec. 2011.) We see no reason for distinguishing between low-income AFDC households and low-income non-AFDC households, in view of the objects and purposes to be accomplished.

Plaintiffs also attack the policy of Release No. 73.1 and topic 3350 on the ground that they tend to impair the employment incentive which Congress clearly intended as a part of the system of public aid. The earned-income exemption of 42 U.S.C. section 602(a)(8) (1970) is a reflection of this intention in regard to AFDC families, and 7 U.S.C. section 2014(c) (1970) illustrates a similar attitude underlying the Food Stamp Act of 1964. The

latter section, in essence, requires that able-bodied adults must seek employment in order for their household to be eligible for food stamps. Unlike the AFDC statute, however, Congress did not see fit in the Food Stamp Act of 1964 to help implement this employment policy by including an earned-income exemption. Plaintiffs argue that we should incorporate in the Food Stamp Act of 1964 the same exemption which Congress has supplied to AFDC families, because failure to do so would contravene "the spirit and intent of the will of Congress."

Congress might have included an exemption in the Food Stamp Act of 1964 for a proportion of earnings but did not. It indicated that the basic standard for determining food stamp eligibility was to be income (see 1964 U.S. Code Cong. & Ad. News 3284), and it apparently decided not to impair the use of this standard by including an exemption for part of wages. The Secretary of Agriculture was granted authority to promulgate necessary regulations, and pursuant to that grant he formulated a definition of income which includes "all compensation for services performed as an employee" (7 C.F.R. sec. 271.3(c)(1)(a)). To paraphrase the decision of the United States Supreme Court in *Knebel,* the Secretary might have defined income in a variety of ways. He might, for example, have treated wages differently from other income. He decided, however, to adopt a definition of income which includes wages, welfare payments, training allowances, and most other monetary receipts. Only a few specific deductions are allowed. But the availability of alternatives does not render the Secretary's choice invalid. Moreover, two plainly acceptable reasons exist for rejecting the alternative suggested by plaintiffs. First of all, disparate treatment of AFDC families and non-AFDC families could be criticized as unfairly discriminating against the latter. (See *Knebel v. Hein* (1977), 429 U.S. 288, 291, 50 L. Ed. 2d 485, 490-92, 97 S. Ct. 549,

552-54.) Secondly, the broad definition of income is consistent with the Act's stated objective of attacking the evils caused by limited food-purchasing power. (7 U.S.C. sec. 2011 (1970).) In summary, we are not persuaded that we should, or have any authority to, add to the food stamp program an employment incentive not included by the Congress or its delegatee, the Secretary of Agriculture.

Next we consider the constitutionality of section 11—8.7 of the Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 11—8.7) and 7 U.S.C. section 2022 (1970). In its judgment order the trial court held:

> "That Section 11—8.7 of Chapter 23 of the Illinois Revised Statutes and Section 2022 of Title 7 of the United States Code which fail to provide an orderly means of Judicial Review of Respondents' decisions regarding eligibility for, termination, suspension, reduction or modification of Food Stamp Benefits, are declared illegal and unconstitutional by depriving said Petitioner of Due Process, Equal Protection, and Right to Remedy and Justice guaranteed by Sections 2 and 12 of Article I of the Illinois Constitution and the Fifth and Fourteenth Amendments of the United States Constitution."

This court has previously decided that decisions of the IDPA concerning questions of entitlement to benefits under the food stamp program are not subject to review under the Administrative Review Act. (*Wilkins v. Illinois Department of Public Aid* (1972), 51 Ill. 2d 88.) The trial court herein focused on the failure of section 11—8.7 to provide for such review. The court apparently found that the absence of such a provision in section 11—8.7 deprived plaintiffs of judicial review of IDPA food stamp decisions and so was unconstitutional. We disagree.

The Administrative Review Act is applicable only where it is expressly adopted by the act creating or conferring power on the agency involved. (Ill. Rev. Stat. 1975, ch. 110, par. 265; *Wilkins v. Illinois Department of Public Aid* (1972), 51 Ill. 2d 88; *People ex rel. Hillison v.*

*Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88.) Where the Act is so adopted, review under its provisions is in fact the only method of review, to the exclusion of "any other statutory, equitable or common law mode of review of decisions of administrative agencies" available prior to the Act. (Ill. Rev. Stat. 1975, ch. 110, par. 265; *Johnson v. Ogilvie* (1970), 47 Ill. 2d 506; *People ex rel. Chicago & North Western Ry. Co. v. Hulman* (1964), 31 Ill. 2d 166.) Review of agency action by prior available methods, then, is only prohibited if the Administrative Review Act is expressly adopted; "if the statute creating or conferring power on an administrative agency does not contain an express reference to the Administrative Review Act, and provides for no other form of review, then common-law certiorari is a general method for reviewing the action of agencies and tribunals exercising administrative functions." (5A Nichols, Illinois Civil Practice sec. 5583, at 194 (rev. vol. 1975). Therefore, the failure of the Illinois Public Aid Code to adopt the Administrative Review Act in regard to food stamp decisions does not mean that persons affected by such decisions are left with no avenue of judicial review; the writ of common law *certiorari* survives as an available method of review.

We need not redefine the distinctions that once existed between common law *certiorari* and statutory *certiorari* and the nature and extent of the review of administrative proceedings considered appropriate under each writ. (See *Carroll v. Houston* (1930), 341 Ill. 531; *People ex rel. Nelson Brothers Storage & Furniture Co. v. Fisher* (1940), 373 Ill. 228; *Superior Coal Co. v. O'Brien* (1943), 383 Ill. 394.) This court has recently held that the substantial differences that at one time existed between common law and statutory *certiorari* have been all but obliterated. (*Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11; *Homefinders, Inc. v. City of*

*Evanston* (1976), 65 Ill. 2d 115.) In these cases this court held that even though the administrative agencies' decisions were not reviewable under the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, pars. 264 through 279), they were nonetheless reviewable by common law *certiorari.* The complaints purportedly filed in those cases under the Administrative Review Act were held to be sufficient to authorize review under common law *certiorari* and the extent of the review and the order entered conformed to review under the Administrative Review Act. We therefore hold that the trial court erred in holding section 11—8.7 unconstitutional, because it provided no opportunity to obtain judicial review of IDPA food stamp decisions.

The trial court's holding that 7 U.S.C. section 2022 (1970) is unconstitutional is also in error. That section of the Food Stamp Act of 1964 accords *de novo* review to retail food distributors who are aggrieved by an adverse food stamp decision. It does not mention food stamp recipients or their rights of review, so the trial court once again decided that this omission, in effect, precluded recipients from standing to review determinations of food stamp eligibility, etc. That conclusion is clearly wrong, because "a statutory grant of review to one class of persons does not necessarily signify a legislative intent to deny review to all others." (*Consumer Federation of America v. FTC* (D.C. Cir. 1975), 515 F.2d 367, 370 n.8.) The question of standing vis-a-vis poor people seeking food stamps was the crucial issue in *Peoples v. United States Department of Agriculture* (D.C. Cir. 1970), 427 F.2d 561. In *Peoples,* the court held that poor people were clearly intended beneficiaries of the food stamp program and so had standing to complain of alleged illegal actions of the Secretary of Agriculture. There, too, the argument was made that poor people had no rights to review under the Administrative Procedure Act due to logical inferences from section 2022. The court disagreed, as do we, and

said:

"The specific review provisions in 7 U.S.C. sec. 2022 both avoided any possibility that the distributors would be held without a legal right to complain of adverse agency action, and gave them a trial de novo well beyond the scope of review available under the general provisions of the Administrative Procedure Act. *See* 5 U.S.C. sec. 706(2)(F). There is no fair implication that granting this special judicial review to food distributors was intended to curtail or negative the judicial review *otherwise presumed to be available for the protection of the poor.*" (Emphasis added.) 427 F.2d 561, 565.

(See also *Rodway v. United States Department of Agriculture* (D.C. Cir. 1973), 482 F.2d 722, 726.) We hold therefore that the trial court erred in deciding that 7 U.S.C. section 2022 denies plaintiffs the right to judicial review.

Since we have held that the trial court's determinations in favor of plaintiffs on all the above issues were erroneous, we need not consider the issue of the propriety of the type of relief fashioned by the court below.

The question of the propriety of the dismissal of the Federal defendants would be of importance only if it were determined that plaintiffs were entitled to some relief under the allegations of their complaint. Inasmuch as it is apparent that the plaintiffs are not entitled to any relief under their complaint, regardless of whom the defendants may be, it is not necessary for us to consider the plaintiffs' cross-appeal from the trial court's order dismissing the Federal defendants.

We conclude that the order of the circuit court finding that section 11—8.7 of the Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 11—8.7) and 7 U.S.C. section 2022 are unconstitutional and that plaintiffs were over-

544

charged for food stamps was in error. We therefore reverse the judgment of the circuit court of Vermilion County in the *certiorari* proceeding but affirm the dismissal of the Federal defendants.

*Affirmed in part and
reversed in part.*