HOMER E. HANRAHAN, Plaintiff-Appellant, v. JAMES K. WILLIAMS *et al.*, Defendants-Appellees.

Second District    No. 2—93—1023

Opinion filed November 22, 1994.

David J. Bradford, Locke E. Bowman III, and Kathleen M. Banar, all of MacArthur Justice Center, and Cynthia G. Bowman, of Northwestern University Legal Clinic, both of Chicago, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-

licitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, and David Bo Mattson, Assistant Attorney General, of Springfield, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Homer Hanrahan, filed a second amended complaint seeking review of a decision of the defendants, the Illinois Prisoner Review Board (the Board) and its individual members, denying plaintiff parole. Count I of the second amended complaint sought an order of *mandamus*; count II sought administrative review of the Board's February 1992 decision denying plaintiff parole via a writ of *certiorari*; and count III also sought administrative review of the Board's June 1993 decision denying plaintiff parole via a writ of *certiorari*.

The Board filed a motion to dismiss count III. The trial court granted the motion to dismiss count III of the second amended complaint. The trial court made a specific finding pursuant to Supreme Court Rule 304(a) that there was no just reason for delaying appeal or enforcement of the order. 137 Ill. 2d R. 304(a).

The sole issue on appeal is whether the writ of *certiorari* will lie to enable administrative review of parole decisions of the Illinois Prisoner Review Board.

■ The Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)) governs judicial review of a final decision of an administrative agency. (735 ILCS 5/3—102 (West 1992).) The Administrative Review Law is applicable only where it is expressly adopted by the act creating or conferring power on the agency involved. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 540.) Where the statute creating or conferring power on an administrative agency does not contain an express reference to the Administrative Review Law and provides for no other form of review, then common-law *certiorari* is a general method for reviewing the action of agencies and tribunals exercising administrative functions. (*Smith*, 67 Ill. 2d at 541.) It is not disputed that the Administrative Review Law is not applicable to review the decisions of the Board.

■ The common-law writ of *certiorari* was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over action by a court or other tribunal exercising quasi-judicial functions. (*Stratton v. Wenona Community Unit District No. 1* (1990), 133 Ill. 2d 413, 427.) The purpose of the writ was, and is, to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether that body proceeded according to the applicable

law. (*Stratton*, 133 Ill. 2d at 427.) Where a final administrative decision has been rendered and the circuit court may grant relief which a party seeks within the context of reviewing that decision, the circuit court has no authority to entertain independent actions regarding the actions of an administrative agency. 133 Ill. 2d at 427-28.

■ There is no absolute right to review by *certiorari*; the issuance of the writ is within the discretion of the court. The purpose of the writ is to prevent injustice. The writ should not issue where it would operate inequitably, unjustly, or in the absence of substantial injury or injustice to the petitioner. The writ will not issue where another adequate remedy is available. *Stratton*, 133 Ill. 2d at 428.

Count III of plaintiff's second amended complaint alleged, *inter alia*, that the Board's decision denying him parole was "arbitrary and capricious, an abuse of discretion, contrary to law and against the manifest weight of the evidence." In his prayer for relief, plaintiff requested that the decision of the Board be reversed.

The issue presented in this case is one of first impression. Whether common-law *certiorari* is available to a prisoner denied parole is a subject that has not attracted the attention of legal scholars, practicing lawyers, or Illinois judges. *United States ex rel. O'Connor v. MacDonald* (N.D. Ill. 1978), 449 F. Supp. 291.

The Board argues that a writ of *mandamus* is the appropriate means for reviewing its decision to deny parole to the plaintiff. *Mandamus* relief is an extraordinary remedy used to direct a public official or body to perform a duty which the plaintiff has a clear right to have performed and which is ministerial, *i.e.*, a duty which does not involve the exercise of judgment or discretion. (*Crump v. Illinois Prisoner Review Board* (1989), 181 Ill. App. 3d 58, 60.) *Mandamus* cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised. (*Crump*, 181 Ill. App. 3d at 60.) A decision to deny parole is a discretionary one and normally not a proper subject for *mandamus* relief. 181 Ill. App. 3d at 61.

In the instant case, plaintiff requested that the Board reverse its decision denying him parole. Therefore, *mandamus* would not afford defendant the type of relief he seeks.

Plaintiff cites numerous cases in which other administrative agency decisions, not reviewable under the Administrative Review Law, have been held subject to review by a writ of *certiorari*. See *Smith*, 67 Ill. 2d 529; *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11; *Philger, Inc. v. Department of Revenue* (1991), 208 Ill. App. 3d 1066; *Torres v. County of Kane, Public Aid Committee*

(1985), 130 Ill. App. 3d 296; *Meylor v. Boys* (1981), 101 Ill. App. 3d 148; *Batley v. Kendall County Sheriff's Department Merit Comm'n* (1981), 99 Ill. App. 3d 622.

The Board responds that those cases are inapplicable to the present case because they involve decisions that are fundamentally different from the parole decision, *i.e.*, the exercise of discretion in reaching the administrative decision.

In describing the parole decision process, the United States Supreme Court stated as follows:

> "The parole-release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made
>
> > 'for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate.' [Citation.]
>
> The decision turns on a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.' [Citation.]"
> *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 9-10, 60 L. Ed. 2d 668, 677, 99 S. Ct. 2100, 2105.

See also *Heirens v. Mizell* (7th Cir. 1984), 729 F.2d 449.

The Board further argues that not only is its decision discretionary, but also the record that would be reviewed would be minimal. Detailed findings of fact are not required if the Board considered all the relevant factors and furnished the inmate with both the grounds and the facts upon which the inferences were drawn. (*Goins v. Klincar* (1992), 225 Ill. App. 3d 961, 963.) Due process does not require a parole board " 'to specify the particular "evidence" in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release. *** To require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilt determination.' " *Tiller v. Klincar* (1990), 138 Ill. 2d 1, 15, quoting *Greenholtz*, 442 U.S. at 15-16, 60 L. Ed. 2d at 680-81, 99 S. Ct. at 2108.

Judicial review of parole board decisions is very narrow (*Outlaw v. O'Leary* (1987), 161 Ill. App. 3d 218, 222); however, that does not

mean that such review of a parole-release decision is impossible even given the fact that the record to be reviewed is minimal and the decision reached through the exercise of discretion. In *Zannino v. Arnold* (3d Cir. 1976), 531 F.2d 687, following denial of parole, Zannino filed a petition for a writ of *habeas corpus* in Federal court, contending that the parole board's decision was arbitrary, capricious, without supporting evidence and denied him equal protection and due process. The reviewing court noted that the threshold question to be determined was whether a Federal district court had jurisdiction to review the parole board's decision. The Government argued that the broad statutory grant of discretion precluded judicial review. Noting that the parole board's own regulations required it to give a statement of reasons to a prisoner denied parole, the court of appeals stated as follows:

> "The precise question we must decide is whether a federal district court, under its habeas corpus jurisdiction, can review the adequacy of the evidence on which the conclusions embodied in such a statement of reasons are based.
> ***
>
> *** The role of judicial review of a Parole Board decision on application for a writ of habeas corpus is to insure that the Board has followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, nor based on impermissible considerations. In other words, the function of judicial review is to determine whether the Board abused its discretion. This function cannot be fulfilled without making some inquiry into the evidence relied on by the Board to support its expressed reasons for denying the parole.
>
> Congress has invested the Parole Board with broad discretion. The district court may not substitute its judgment for that of the Board, and, therefore, the scope of its review is very limited. In this case, the district court must determine whether the information relied on by the Board to support its admittedly adequate reasons was sufficient to provide a factual basis for those reasons. The inquiry is not whether the Board is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons."
> *Zannino*, 531 F.2d at 690-91.

In *United States ex rel. O'Connor v. MacDonald*, the petitioner and his codefendant had parole hearings, the codefendant's taking place first. The codefendant was allowed parole; however, the petitioner was denied parole. Thereafter, petitioner filed an application for a writ of *habeas corpus* in Federal court, alleging that he had

been denied due process and equal protection of the law by the Illinois Prisoner Review Board when it denied him parole based upon the "seriousness of the offense." The petitioner contended that the Board's decision was arbitrary and capricious; its identification of him as the main instigator of the offense for which he and his codefendant were convicted was without evidentiary support and thus an arbitrary and capricious conclusion; and that the granting of parole to his codefendant was a discriminatory action on the part of the Board. Both parties filed motions for summary judgment.

In affirming the grant of summary judgment to the respondents, the district court stated as follows:

> "The question whether in a particular case an Illinois prisoner has an available post-conviction remedy is an old and troublesome one. [Citations.] For a case like the one at bar, section[ ] 1003—3—1 *et seq.* of the Uniform Code of Corrections which govern[s] Parole Board rulings, do[es] not provide for judicial review. Moreover, it is fair to say that Illinois courts display an unwillingness to make state remedies available to prisoners. [Citation.] Whether common law certiorari *** is available to a prisoner like petitioner, is a subject that has not attracted the attention of legal scholars, practicing lawyers, or Illinois judges." *O'Connor*, 449 F. Supp. at 295 n.2.

The district court went on to review circumstances surrounding petitioner's conviction and sentencing and the parole hearing. Conceding that the subcommittee of the board might have been mistaken in concluding that petitioner, rather than the codefendant, was the instigator of the offense, the court stated as follows:

> "This, however, does not make the decision arbitrary and capricious. The decision of a state administrative agency is an arbitrary one when it is made without fair, solid, and substantial cause or reason; but it is not necessarily so because mistaken or even wrong. [Citations.] The Board gave a reason for the conclusion it reached: the seriousness of petitioner's offense. This was adequate for the minimum requirements of due process. [Citations.] Of course, the Board's action is subject to judicial review in order to determine whether it has followed the appropriate criteria, rational and consistent with the applicable statutes, and that its decision is not arbitrary and capricious nor based on impermissible considerations. [Citations.] However, a district court cannot substitute its judgment on questions of parole for that of a parole board; therefore, the scope of judicial review is very limited." 449 F. Supp. at 296.

It would appear that the type of review sought by the plaintiff in the case at bar was afforded to the petitioner in *O'Connor*. Thus the

Board's argument that its decision is not reviewable because of its discretionary nature and minimal record is not persuasive.

In the above cases, the review conducted by the court under Federal *habeas corpus* mirrors a review proceeding under the Administrative Review Law. The extent of review pursuant to a writ of *certiorari* is the same as under the Administrative Review Law. (See *Smith*, 67 Ill. 2d at 542.) Under the Administrative Review Law, an agency's findings and conclusions on questions of fact are *prima facie* true and correct. (*Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, 55.) Courts may not interfere with the discretionary authority vested in an administrative body unless an administrative decision is against the manifest weight of the evidence or if the agency exercises its authority in an arbitrary or capricious manner. *Board of Education*, 165 Ill. App. 3d at 55.

There appear to be two lines of cases which have developed with regard to the type of decisions a writ of *certiorari* may be utilized to review. "[E]arlier decisions of our supreme court, as reflected by *Jarman v. Board of Review* (1931), 345 Ill. 248, 255, 178 N.E. 91, and cases cited therein, hold that the circuit court may award the common law writ of *certiorari* to review decisions of an administrative agency in only two classes of cases, those where the agency exceeded its jurisdiction, and those where the agency has proceeded illegally." (*Torres v. County of Kane, Public Aid Committee* (1985), 130 Ill. App. 3d 296, 297-98.) In *Torres*, a panel of this court cited recent supreme court decisions holding that the differences between common-law and statutory *certiorari* no longer existed. (See *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529; *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115; *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11.) Therefore, the court concluded that common-law *certiorari* is available to review the determination of an administrative agency on the ground that the agency's finding was against the manifest weight of the evidence where review under the Administrative Review Law is not provided. *Torres*, 130 Ill. App. 3d at 298.

As to the two recent appellate court decisions which followed the older rule limiting the application of the common-law writ of *certiorari* (*C&K Distributors, Inc. v. Hynes* (1984), 122 Ill. App. 3d 525, and *Hartley v. Will County Board of Review* (1982), 106 Ill. App. 3d 950), the *Torres* court declined to follow them, noting that those cases did not consider the more recent line of cases decided by the supreme court which eliminated the old distinctions between common-law *certiorari* and review under the Administrative Review Law.

We note that in *City of Highwood v. Obenberger* (1992), 238 Ill.

App. 3d 1066, relied on by the State in this case, a panel of this court, relying on *Hartley*, cited the older rule limiting the application of a writ of *certiorari*. However, as that case was disposed of on a different basis, we deem the citation to *Hartley* to be *dicta*.

■ On the basis of the foregoing, we conclude that a petition for writ of *certiorari* is an appropriate means whereby a person who has been denied parole, as in the case here before us, can seek review, albeit a limited one, of the Board's decision denying that person parole. Therefore, the trial court erred when it dismissed count III of plaintiff's amended complaint.

The judgment of the circuit court is reversed, and the case is remanded for proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

QUETSCH and PECCARELLI, JJ., concur.