NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

               Docket No. 78357--Agenda 15--January 1996.

        HOMER E. HANRAHAN, Appellee, v. JAMES K. WILLIAMS et al.,

                               Appellants.

                    Opinion filed September 19, 1996.

          JUSTICE MILLER delivered the opinion of the court:

          Plaintiff, Homer E. Hanrahan, filed a second-amended

complaint in the circuit court of Lee County against defendants,

the Illinois Prisoner Review Board and its individual members

(collectively, the Board), challenging the denial of his parole. In

count III, Hanrahan sought the issuance of a common law writ of

certiorari to obtain review of the Board's June 1993 decision to

deny him parole. The circuit court dismissed count III as

"insufficient in law," and found no just reason for delaying appeal

of the order (155 Ill. 2d R. 304(a)). The appellate court reversed

the dismissal. 267 Ill. App. 3d 735. We granted the Board's

petition for leave to appeal (155 Ill. 2d R. 315), and allowed

amici curiae to join in filing a brief (155 Ill. 2d R. 345).

                                BACKGROUND

          In 1976, a jury found Hanrahan guilty of murder,

aggravated kidnapping, aggravated battery, and conspiracy. He was

sentenced to serve concurrent indeterminate prison terms of 50 to

100 years for murder, 20 to 40 years for aggravated kidnapping, and

3 to 10 years for aggravated battery. His convictions and sentences

were affirmed on direct review. People v. Hanrahan, 64 Ill. App. 3d

207 (1978). Hanrahan is currently incarcerated at the Dixon

Correctional Center, having served approximately 20 years of his

sentences. He has been eligible for parole since 1983.

          In June 1993, the Board conducted parole hearings, and

ultimately denied Hanrahan parole. Thereafter, Hanrahan filed a

second amended complaint consisting of three counts. In count III,

Hanrahan requested that the circuit court issue a common law writ

of certiorari to review the Board's June 1993 decision to deny him

parole. Hanrahan alleged in part that the decision to deny him

parole was "arbitrary and capricious, an abuse of discretion,

contrary to law and against the manifest weight of the evidence."

In his prayer for relief, Hanrahan requested that the circuit court

reverse the Board's decision.

          After granting Hanrahan leave to file his second-amended

complaint, the circuit court granted the Board's oral motion to

dismiss count III of the complaint. The circuit court ruled that

count III was "insufficient in law," and found no just reason for

delaying appeal of the order. 155 Ill. 2d R. 304(a). Hanrahan

appealed the dismissal.

          The appellate court reversed. 267 Ill. App. 3d 735. The

appellate court first stated that the Administrative Review Law is

not applicable to review of the Board's parole-release decisions.

The appellate court next noted that a writ of mandamus would not

afford Hanrahan the type of relief he sought. The appellate court

further found unpersuasive the Board's argument that, because of

its discretionary nature and the minimal record resulting from the

action, the parole-release decision is not reviewable by issuance

of a common law writ of certiorari. To illustrate the feasibility

of judicial review of parole-release decisions, the appellate court

pointed to federal habeas corpus proceedings in which federal

courts have reviewed the merits of parole-release decisions. See

Zannino v. Arnold, 531 F.2d 687 (3d Cir. 1976) (federal prisoner

challenged federal parole board's decision to deny parole and

sought relief under 28 U.S.C. §2241); United States ex rel.

O'Connor v. MacDonald, 449 F. Supp. 291 (N.D. Ill. 1978) (state

prisoner challenged Illinois parole board's decision to deny parole

and sought relief under 28 U.S.C. §2254). Noting that the extent of

review conducted by a federal court in habeas corpus proceedings is

similar to that under a common law writ of certiorari, the

appellate court found that common law writs of certiorari may issue

to review parole-release decisions in Illinois.

          We granted the Board's petition for leave to appeal (155

Ill. 2d R. 315), and have allowed the American Civil Liberties

Union of Illinois, Chicago Conference of Black Lawyers, Illinois

Attorneys for Criminal Justice, Illinois Public Defender

Association, National Association of Criminal Defense Lawyers,

Northwestern University Legal Clinic, and the office of the State

Appellate Defender to file a brief, collectively, as friends of the

court (155 Ill. 2d R. 345).

                                DISCUSSION

          Illinois inmates who are denied parole may seek several

remedies, including a writ of mandamus in state court and a writ of

habeas corpus in federal court. In the parole context, a writ of

mandamus may be used to compel the Board to exercise its

discretion, but may not be used to compel the Board to exercise its

discretion in a certain manner. See, e.g., People ex rel. Abner v.

Kinney, 30 Ill. 2d 201 (1964) (mandamus used to compel Board to

provide parole-eligible inmate with a parole hearing). In addition,

federal courts will grant a writ of habeas corpus if a petitioner

demonstrates that his custody is in violation of the Constitution

or laws of the United States. Lilly v. Gilmore, 988 F.2d 783, 789

(7th Cir. 1993); Escobar v. O'Leary, 943 F.2d 711, 720 (7th Cir.

1991); see also United States ex rel. Arnold v. Illinois Prisoner

Review Board, 803 F. Supp. 222 (N.D. Ill. 1992) (Illinois inmate

petitioned for writ of habeas corpus pursuant to 28 U.S.C. §2254

because of claimed equal protection violation). Hanrahan did not

request either mandamus or habeas corpus relief in count III of his

second-amended complaint. Instead, Hanrahan sought the issuance of

a common law writ of certiorari.

          A common law writ of certiorari is a general method for

obtaining circuit court review of administrative actions when the

act conferring power on the agency does not expressly adopt the

Administrative Review Law and provides for no other form of review.

Smith v. Department of Public Aid, 67 Ill. 2d 529, 541 (1977). The

standards of review under a common law writ of certiorari are

essentially the same as those under the Administrative Review Law.

Smith, 67 Ill. 2d at 541-42. Under the Administrative Review Law,

courts generally do not interfere with an agency's discretionary

authority unless the exercise of that discretion is arbitrary and

capricious (Dorfman v. Gerber, 29 Ill. 2d 191, 196 (1963)) or the

agency action is against the manifest weight of the evidence (Murdy

v. Edgar, 103 Ill. 2d 384, 391 (1984)). In the instant case, the

parole-release statutory scheme fails to adopt the Administrative

Review Law or provide for another form of review. Hanrahan thus

contends that circuit courts may issue common law writs of

certiorari to review the merits of the Board's parole-release

decisions.

          Whether, and to what extent, action by an administrative

agency is reviewable is a question of statutory interpretation.

Greer v. Illinois Housing Development Authority, 122 Ill. 2d 462,

497 (1988) (whether IHDA action is reviewable is a question of

statutory interpretation). In this case, we must determine whether

the legislature intended for the merits of the Board's parole-

release decision to be reviewable by courts, an issue of first

impression in Illinois.

          While most agency actions are presumed reviewable, no

presumption arises if there is a statutory bar to review or if

statutory language commits the agency decision to unreviewable

agency discretion. Greer, 122 Ill. 2d at 497. Factors to consider

in determining whether statutory language precludes judicial review

include the statute's "express language, the structure of the

statutory scheme, its objectives, its legislative history, and the

nature of the administrative action involved." Greer, 122 Ill. 2d

at 497-98. "Of particular importance is whether the statute

contains standards, goals, or criteria by which a court may

evaluate agency action." Greer, 122 Ill. 2d at 498, citing Citizens

to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 28 L.

Ed. 2d 136, 150, 91 S. Ct. 814, 820 (1971). Accordingly, judicial

review is precluded if "the statute is drawn so that a court would

have no meaningful standard against which to judge the agency's

exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830, 84

L. Ed. 2d 714, 723, 105 S. Ct. 1649, 1655 (1985).

          The Illinois Prisoner Review Board is an administrative

agency created by the legislature. See People ex rel. Abner v.

Kinney, 30 Ill. 2d 201, 205 (1964) (Parole and Pardon Board "sits

as an administrative body with the power to make final decisions in

parole matters"). The members of the Board are appointed by the

Governor with the advice and consent of the Senate. 730 ILCS 5/3--

3--1(b) (West 1992). To be eligible for appointment, a person must

have five years' experience in the field of penology, corrections

work, law enforcement, sociology, law, education, social work,

medicine, psychology, other behavioral sciences, or a combination

of these fields. 730 ILCS 5/3--3--1(b) (West 1992).

          One of the Board's duties is to determine whether an

eligible inmate should be granted or denied parole. 730 ILCS 5/3--

3--2(a)(1), (a)(2) (West 1992); see also 730 ILCS 5/3--3--1(a)(1)

(West 1992) (Board is "paroling authority" for persons sentenced

under law in effect prior to effective date of the determinate

sentencing act of 1977). "Parole" is defined as "the conditional

and revocable release of a committed person under the supervision

of a parole officer." 730 ILCS 5/3--1--2(k) (West 1992). In making

parole-release decisions, the Board must consider certain material

and reports, including statements from the inmate, the State's

Attorney and the victim. 730 ILCS 5/3--3--4(d) (West 1992). The

Board must render the parole-release decision within a reasonable

time after hearing and must state the basis for its decision. 730

ILCS 5/3--3--5(f) (West 1992).

          The legislature has also authorized the Board to

promulgate its own rules regarding the conduct of its work and the

exercise of its discretion. 730 ILCS 5/3--3--2(d), 3--3--5(h) (West

1992). The rules adopted by the Board (20 Ill. Adm. Code §§1610.10

through 1610.180 (1992-93)) provide that "[t]he Board grants parole

as an exercise of grace and executive discretion as limited or

defined by the Illinois General Assembly in duly adopted

legislation" and that "[t]he parole release decision is a

subjective determination based on available relevant information."

20 Ill. Adm. Code §§1610.50(a), (b) (1992-93). The rules provide

lists of factors that may be considered by the Board in determining

whether to grant or deny parole. 20 Ill. Adm. Code §1610.50(b)

(1992-93) (listing factors relevant to inmate's prior history,

committing offense, institutional adjustment, and release plans).

The rules, however, specifically state that the parole-release

decision is not limited to the consideration of only those factors

listed. 20 Ill. Adm. Code §1610.50(b) (1992-93).

          The legislature has set forth criteria under which the

Board must deny parole in section 3--3--5(c) of the Unified Code of

Corrections, which reads:

                    "The Board shall not parole a person eligible

               for parole if it determines that:

                    (1) there is a substantial risk that he will

               not conform to reasonable conditions of parole; or

                    (2) his release at that time would deprecate

               the seriousness of his offense or promote

               disrespect for the law; or

                    (3) his release would have a substantially

               adverse effect on institutional discipline." 730

               ILCS 5/3--3--5(c) (West 1992).

The rules set forth the same criteria for determining when the

Board must deny parole. 20 Ill. Adm. Code §1610.50(a) (1992-93). We

note that the council commentary of section 3--3--5(c) states that

"[t]he Board should state one or more of the reasons listed in

[section 3--3--5(c)] as the basis for its decision denying parole

***. Additional reasons may also be stated." 730 ILCS Ann. 5/3--3--

5, Council Commentary, at 56 (Smith-Hurd 1992).

          Hanrahan contends that the Board's discretion is guided

by statutory criteria, and that the rules set forth well-defined

limits to the Board's discretion. Hanrahan concludes that, because

the parole-release statutory scheme "contains standards, goals, or

criteria by which a court may evaluate agency action" (Greer, 122

Ill. 2d at 498), judicial review by the issuance of a common law

writ of certiorari should be available.

          We disagree. The statutory provisions provide criteria

under which the Board must deny parole. The statutory provisions do

not, however, state when the Board must grant parole. Heirens v.

Mizell, 729 F.2d 449, 465 (7th Cir. 1984) (neither statutory scheme

nor rules provide for circumstances under which the Board would be

required to grant parole). The Board is free to consider any

available relevant information to make its determination to grant

or deny parole. 20 Ill. Adm. Code §1610.50(b) (1992-93). Further,

the rules expressly provide that parole is granted "as an exercise

of grace and executive discretion" (20 Ill. Adm. Code §1610.50(a)

(1992-93)), and Illinois courts have consistently held that parole

is not a right (People v. Hawkins, 54 Ill. 2d 247, 252 (1973);

People ex rel. Jones v. Brantley, 45 Ill. 2d 335, 337-38 (1970);

People ex rel. Castle v. Spivey, 10 Ill. 2d 586, 594-95 (1957);

People ex rel. Richardson v. Ragen, 400 Ill. 191, 201 (1948);

People v. Nowak, 387 Ill. 11, 14 (1944)).

          We believe that Illinois' statutory criteria and the

Board's rules do not provide standards for release on parole

sufficiently objective to allow a court to evaluate the Board's

decision to deny parole. We thus conclude that the legislature, in

drafting the statutory language, intended the Board to have

complete discretion in determining whether to grant parole when the

denial of parole is not mandated by statute.

          We recognize that our interpretation of section 3--3--

5(c) of the Unified Code of Corrections differs from the United

States Court of Appeals for the Seventh Circuit's interpretation of

the same statutory language in United States ex rel. Scott v.

Illinois Parole & Pardon Board, 669 F.2d 1185 (7th Cir. 1982).

While the issue presented in Scott differed from the issue

presented here, the Scott court, in its analysis, concluded that

section 3--3--5(c) of the Unified Code of Corrections (Ill. Rev.

Stat. 1979, ch. 38, par. 1003--3--5(c) (Board "shall not" grant

parole "if" one of three statutory criteria are found)) requires

"the Board to release an inmate who is eligible for parole unless

one of the specified reasons for denial are found to exist." Scott,

669 F.2d at 1189. As to its interpretation, however, the Scott

court further observed:

                    "[B]y stating its rule in the negative

               Illinois has left open the possibility that its

               statute can also be reasonably read as not creating

               an expectancy of release on parole. It can be read

               as merely a statement by the Illinois legislature

               as to when the Board must deny parole, leaving the

               Board free in the absence of those conditions to

               exercise its own discretion in deciding whether or

               not parole should be granted. Under this

               construction, the statute would not create a

               legitimate expectation of release and due process

               considerations would not apply." Scott, 669 F.2d at

               1189.

Our construction of section 3--3--5(c) is consistent with this

latter construction mentioned but rejected by the Seventh Circuit

in Scott. This court is not bound by the Seventh Circuit's

interpretation of our statutes. People v. Kokoraleis, 132 Ill. 2d

235, 293-94 (1989) ("decisions of lower Federal courts are not

conclusive on State courts, except insofar as the decision of the

lower Federal court may become the law of the case"); see also

Averhart v. Tutsie, 618 F.2d 479 (7th Cir. 1980) (where Indiana

Supreme Court expressly held that state's parole-release statute

created no expectancy of release, the federal court was bound by

that interpretation).

          Our finding is supported by the general nature of parole-

release decisions, which are often based on subjective factors and

predictions rather than objective factors. In Greenholtz v. Inmates

of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 60 L. Ed.

2d 668, 99 S. Ct. 2100 (1979), the Supreme Court characterized the

nature of parole-release determinations as follows:

                    "The parole-release decision *** depends on an

               amalgam of elements, some of which are factual but

               many of which are purely subjective appraisals by

               the Board members based upon their experience with

               the difficult and sensitive task of evaluating the

               advisability of parole release. Unlike the

               revocation decision, there is no set of facts

               which, if shown, mandate a decision favorable to

               the individual. The parole determination, like a

               prisoner-transfer decision, may be made

                    `for a variety of reasons and often involve[s]

                    no more than informed predictions as to what

                    would best serve [correctional purposes] or

                    the safety and welfare of the inmate.' "

                    Greenholtz, 442 U.S. at 9-10, 60 L. Ed. 2d at

                    677, 99 S. Ct. at 2105, quoting Meachum v.

                    Fano, 427 U.S. 215, 225, 49 L. Ed. 2d 451,

                    459, 96 S. Ct. 2532, 2538 (1976).

The Greenholtz court also stated:

               "In parole releases, *** few certainties exist. In

               each case, the decision differs from the

               traditional mold of judicial decisionmaking in that

               the choice involves a synthesis of record facts and

               personal observation filtered through the

               experience of the decisionmaker and leading to a

               predictive judgment as to what is best both for the

               individual inmate and for the community. *** The

               entire inquiry is, in a sense, an `equity' type

               judgment that cannot always be articulated in

               traditional findings." Greenholtz, 442 U.S. at 8,

               60 L. Ed. 2d at 676, 99 S. Ct. at 2104.

We believe that the discussion in Greenholtz concerning the general

nature of parole is instructive.

          Hanrahan argues that the parole-release decision is no

different from other administrative agency decisions, reviewable

upon the issuance of a common law writ of certiorari, where the

agency exercised wide discretion subject to legislative limits.

See, e.g., Stratton v. Wenona Community Unit District No. 1, 133

Ill. 2d 413 (1990) (school board's decision to expel student for

misconduct); Smith v. Department of Public Aid, 67 Ill. 2d 529

(1977) (Illinois Department of Public Aid's decision as to

entitlement of benefits under food stamp program); Nowicki v.

Evanston Fair Housing Review Board, 62 Ill. 2d 11 (1975) (Fair

Housing Review Board's decision to impose fine after finding

violation of ordinance). We believe, however, that the highly

subjective and predictive nature of the parole-release decision,

along with the fact that there are no standards sufficiently

objective to allow a court to evaluate the Board's decision to deny

parole other than the statutory criteria mandating denial, sets the

parole-release decision apart from other cases.

          We further believe that the Board's parole-release

decisions more closely resemble those decisions found to be

unreviewable in the federal courts pursuant to the Administrative

Procedure Act (5 U.S.C. §701(a)(2) (1994) (precludes judicial

review of agency action when "action is committed to agency

discretion by law")). See Lincoln v. Vigil, 508 U.S. 182, 124 L.

Ed. 2d 101, 113 S. Ct. 2024 (1993) (Indian Health Service's

decision to discontinue clinical program for Indian children was

committed to agency discretion by law and thus not subject to

judicial review under APA); Webster v. Doe, 486 U.S. 592, 100 L.

Ed. 2d 632, 108 S. Ct. 2047 (1988) (CIA Director's decision to

discharge employee for national security reasons was committed to

agency discretion by law and thus not subject to judicial review

under APA); Heckler v. Chaney, 470 U.S. 821, 84 L. Ed. 2d 714, 105

S. Ct. 1649 (1985) (Food and Drug Administration's decision not to

take enforcement action was committed to agency discretion by law

and thus not subject to judicial review under APA); Singh v. Moyer,

867 F.2d 1035 (7th Cir. 1989) (United States Information Agency's

recommendation to deny waiver of two-year foreign residency

requirement was committed to agency discretion by law and thus not

subject to judicial review under APA).

          Hanrahan recognizes the predictive nature of the parole-

release decision but contends that it does not shield the merits of

the decision from judicial review. Hanrahan compares the predictive

nature of the parole-release decision to the predictive nature of

the Illinois Secretary of State's decision to restore driving

privileges to persons whose licenses have been revoked. Hanrahan

points out that the Secretary of State's actions are reviewable in

the circuit court. Murdy v. Edgar, 103 Ill. 2d 384 (1984). As the

Board observes, however, unlike the parole-release statutory

scheme, the Illinois Vehicle Code expressly provides for review of

the Secretary of State actions under the Administrative Review Law.

625 ILCS 5/6--212 (West 1994).

          Hanrahan next points out that some states provide for

judicial review of the merits of parole-release decisions. See

State v. Goulette, 65 Wis. 2d 207, 222 N.W.2d 622 (1974) (Wisconsin

affords judicial review of parole-release decisions by issuance of

a common law writ of certiorari); Wayne County Prosecutor v. Parole

Board, 210 Mich. App. 148, 532 N.W.2d 899 (1995) (Michigan statute

provides for judicial review of parole-release decisions). Other

states, however, have found that the merits of parole-release

decisions are not subject to judicial review. See Carrion v. New

York State Board of Parole, 620 N.Y.S.2d 420, 210 A.D.2d 403

(1994); In re Question Concerning State Judicial Review of Parole

Denial, 199 Colo. 463, 610 P.2d 1340 (1980). It is apparent that

each state must decide, based on its own statutory scheme, whether

the merits of parole-release decisions are reviewable.

          Finally, amici curiae contend that certain constitutional

rights of inmates subject to parole have been violated. Neither

party, however, has raised these issues. We therefore do not

address them. See People v. P.H., 145 Ill. 2d 209, 234 (1991).

                                CONCLUSION

          For the reasons set forth above, we find that a common

law writ of certiorari may not be issued to review the merits of

the Board's decision to deny Hanrahan's parole. Because no set of

facts could be proved which would entitle Hanrahan to a common law

writ of certiorari, count III of his second-amended complaint was

properly dismissed.

          The judgment of the appellate court is reversed, the

judgment of the circuit court of Lee County is affirmed, and the

cause is remanded for further proceedings.

Appellate court judgment reversed;

                                         circuit court judgment affirmed;

                                                          cause remanded.